COMMONWEALTH vs. ALEN BOYER.

Suffolk.  March 2, 1987. — May 19, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rules of Appellate Procedure. Jury and Jurors. Practice, Criminal,* Transcript of hearing, Empaneling of jury, Examination of jurors, Instructions to jury, Impeachment by prior conviction, Comment by judge. *Evidence,* Prior conviction. *Judge.*

In the absence of a transcript of that portion of a criminal proceeding during which the jury were empanelled, this court declined, on the record in the case, to adopt the defendant's version of what the judge said to the prospective jurors, as contrasted with the version which was set out in the Commonwealth's statement of proceedings, and adopted by the judge. [53-54]

At the trial of complaints charging a defendant with common night walking, the judge was not required by G. L. c. 234, § 28, to conduct an individual voir dire on the issue of prejudice against homosexuals in the absence of any basis in the record to require him to determine that there was a substantial risk of extraneous influences on the jury. [54-56]

At the trial of complaints charging the defendant with common night walking, no substantial risk of a miscarriage of justice resulted from the judge's denial of the defendant's motion in limine and the subsequent unobjected-to introduction of his prior convictions for prostitution and disorderly conduct, where the evidence of the defendant's guilt was overwhelming, where, in the judge's instructions to the jury, he clearly charged that the prior convictions were to be considered solely on the issue of credibility and where, contrary to the defendant's assertion, the prosecutor did not misuse the evidence of the defendant's prior convictions in closing argument. [56-59]

At the trial of complaints charging the defendant with common night walking, certain unobjected-to comments by the judge, alleged to have indicated a bias against homosexuals and against the defendant's credibility in particular, when considered in light of the judge's charge as a whole and the evidence in the case, created no substantial risk of a miscarriage of justice. [59-60]

COMPLAINTS received and sworn to in the Boston Municipal Court Department on January 2, 1985, February 20, 1985, and March 11, 1985, respectively.

The cases were tried before *Walter J. Hurley*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Esther J. Horwich* for the defendant.

*David B. Mark*, Assistant District Attorney, for the Commonwealth.

LYNCH, J.   After a first instance jury trial in the Boston Municipal Court the defendant was convicted on three complaints of common night walking, G. L. c. 272, § 53 (1984 ed.).[1] On each complaint he was sentenced to three months in a house of correction, to be served consecutively. A motion for stay of execution was allowed by the Appeals Court. We took the case on our own motion and we affirm.

The defendant claims error in the following: (1) the trial judge's denial of the defendant's motion in limine and the subsequent introduction of a 1979 conviction for prostitution and a 1982 conviction for disorderly conduct; (2) the judge's refusal to conduct an individual voir dire on the issue of prejudice against homosexuals; and (3) the judge's alleged expression of opinion during the trial indicating his bias against the defendant. We address at the outset the defendant's additional objection to the judge's adoption of the Commonwealth's statement of proceedings.

1. *Statement of the proceedings*. The parties agree that during the judge's empanelling of the jury the tape recorder was not on and, consequently, no transcript exists of that portion of the case. Under Mass. R. A. P. 8 (c), as appearing in 378 Mass. 932 (1979), where no transcript of the proceedings is available, "the appellant may, within thirty days after the notice of appeal is filed, file a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may file objections or proposed amendments thereto within ten days after service." The papers are then submitted to the trial judge "for settlement

---

[1] A "common night walker" under G. L. c. 272, § 53 (1984 ed.), is someone who is abroad at night and solicits others to engage in illicit sexual acts. See *Commonwealth* v. *King*, 374 Mass. 5, 13-14 (1977); *Thomes* v. *Commonwealth*, 355 Mass. 203, 207 (1969).

and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal." *Id.*

The defendant served his statement of proceedings on the Commonwealth on June 4, 1985. On July 2, 1985, the defendant filed a motion to have the court accept as conclusive his statement of proceedings, since the Commonwealth had yet to file its statement. The Commonwealth's attorney does not dispute that he failed to submit his statement until August 1, 1985. On August 22, 1985, the judge acknowledged that the Commonwealth's statement was untimely but admitted the statement over the defendant's objection. The only material difference between the statement submitted by the defendant and the one adopted by the judge is that the defendant does not agree that the judge informed the jurors that the defendant was a homosexual male who the evidence might show traveled at night as a transvestite and asked if any juror would have difficulty sitting on such a case. Since the final form of the statement is for the judge, it matters not that the Commonwealth did not file its version within the time prescribed. The statement settled and approved by the judge was consistent with his final charge which is contained in the transcript. We are, therefore, confronted with a dispute between the defendant on one side and the judge and the assistant district attorney on the other as to what was actually said to the jury. We are not prepared, on the record in this case, to adopt the defendant's version.

2. *Voir dire.* Even assuming that the defendant's version is correct there was no error in the judge's failing to conduct an individual voir dire. The defendant filed a motion for examination of jurors, which was denied with regard to the questions dealing with homosexuality.[2] In denying the defendant's

---

[2] The defendant's motion for examination of jurors contained the following questions with regard to homosexuality: "3. The defendant in this case is a homosexual. Do you have feelings about homosexuals that might make it difficult for you to be impartial in deciding this case? 4. Do you believe that homosexuality should be illegal? 5. Are you a member of a religion that regards homosexuality as a sin? If so, might your religious beliefs influence you in deciding the defendant's guilt or innocence? 6. Do you believe that homosexuals are more likely to engage in illegal sexual acts than other people?"

motion the judge stated that he thought the questions unduly emphasized the issue of homosexuality and he believed that the statutory questions sufficed. The defendant agrees that the judge told the jury the nature of the offense charged and asked if anyone thought they might have trouble being impartial in such a case. The defendant claims that individual voir dire was mandated by G. L. c. 234, § 28 (1984 ed.),[3] because the defendant was in a class (i.e., homosexuals) against whom jurors might hold "preconceived opinions toward . . . credibility."

"[General Laws c. 234, § 28,] is designed to impose a duty on the judge to examine jurors fully with respect to possible bias or prejudice if it appears that particular jurors or the jury pool as a whole may be influenced by extraneous factors to the extent that jurors would be unable to render an impartial verdict on the evidence presented to them and must, therefore, be excused for cause." *Commonwealth* v. *Dickerson*, 372 Mass. 783, 793 (1977). There must be some basis for finding that there exists a substantial risk of extraneous influences on the jury. *Commonwealth* v. *Campbell*, 378 Mass. 680, 696 (1979). The judge has discretion in deciding whether a foundation has been established for individual voir dire. *Commonwealth* v. *Cameron*, 385 Mass. 660, 667 (1982). *Commonwealth* v. *Shelley*, 381 Mass. 340, 352 (1980).

This court has held that unless questions are aimed at "revealing racial bias or any similarly indurated and pervasive prejudice," they are not constitutionally required. *Commonwealth* v. *Rhoades*, 379 Mass. 810, 821 (1980), quoting *Commonwealth* v. *Bailey*, 370 Mass. 388, 399 (1976). See *Common-*

---

[3] General Laws c. 234, § 28 (1984 ed.), provides in part: "For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall, or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case."

*wealth* v. *Sheline*, 391 Mass. 279, 289 (1984); *Commonwealth* v. *Estremera*, 383 Mass. 382, 387 (1981).[4] "Absent some reason to suspect that jurors may be so prejudiced . . . a judge is warranted in relying upon his final charge to the jury to purge any bias from the jurors prior to their deliberations." *Id.* at 388. To accept the defendant's contention in this case would be tantamount to ruling that individual voir dire is required in every case involving charges of crimes of a sexual nature against an avowed homosexual. We are not inclined to go so far. This court has rejected the notion that the mere presence of issues related to homosexual activity always necessitates individual voir dire of all potential jurors. *Commonwealth* v. *Shelley, supra* at 353.

While bias against homosexuals may exist among some people, there was nothing presented to the judge to support the defendant's contention that individual voir dire was required. "Ordinarily, it is for the judge to determine when a problem of extraneous influence has arisen. His actions will be upheld unless he has abused his discretion by refusing to examine jurors in the face of a 'substantial risk' of bias." *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982), citing *Commonwealth* v. *Shelley, supra* at 352. There was no basis in the record to require the judge to determine that there was a substantial risk of extraneous influences on the jury. Furthermore, if we were to adopt a new rule requiring individual voir dire, not constitutionally mandated, it would apply only to future cases. *Commonwealth* v. *Hobbs, supra.* There was no error.

3. *Prior convictions.* The defendant filed a motion in limine to exclude from admission his prior convictions. The motion was denied and the Commonwealth introduced at trial a 1982

---

[4] The following have been found not to involve prejudice as "indurated and pervasive" as racial bias: whether a juror would believe a police officer over other witnesses, *Commonwealth* v. *Sheline*, 391 Mass. 279, 289 (1984); prejudice regarding psychiatrists, *Commonwealth* v. *Estremera*, 383 Mass. 382, 388 (1981); credibility of prisoners as witnesses, *Commonwealth* v. *Campbell*, 378 Mass. 680, 696 (1979); religious questions regarding abortion, *Commonwealth* v. *Kudish*, 362 Mass. 627, 631-632 (1972).

conviction for disorderly conduct and a 1979 conviction for prostitution. The defendant did not object at trial. The defendant claims that the similarity to the crimes charged made the introduction of evidence of the prior crimes highly prejudicial to him, especially in light of their limited probative value as to credibility. The defendant claims that the problem was exacerbated by the Commonwealth's emphasis on these convictions in closing argument. The Commonwealth claims that there was no prejudice to the defendant, there was no misuse of the convictions in closing arguments, the judge gave appropriate limiting instructions, and any error would be harmless because of the overwhelming evidence of the defendant's guilt.

Whether to allow the admission of evidence of prior convictions which fall within the statute involves an exercise of discretion which is reviewable by an appellate court. *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984). The judge must weigh the danger of unfair prejudice against the probative value of the evidence of a prior conviction for the purposes of impeachment. *Id.* The danger is most prevalent where the prior conviction is for a crime substantially similar to the crime for which the defendant is on trial. See *Commonwealth* v. *Millyan*, 399 Mass. 171, 185 (1987). Where the record shows that the judge has failed to exercise discretion, there exists an error of law requiring reversal. *Commonwealth* v. *Guilfoyle*, 396 Mass. 1003, 1004 (1985). It is also error for the judge to admit the prior convictions *because* of their similarity to the crimes charged and the inference that they show a propensity to commit that type of crime. See *Commonwealth* v. *Guilfoyle, supra; Commonwealth* v. *Roucoulet,* 22 Mass. App. Ct. 603, 608 (1986).

The Commonwealth correctly asserts that here we must review the introduction of the evidence under the standard of "whether the alleged errors created a substantial risk of a miscarriage of justice." *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 7 (1986). A motion in limine is insufficient to preserve appellate rights where, as in the present case, there was no objection at trial to the introduction of evidence of the convictions. *Id.* Here, where the evidence of guilt was overwhelming,

there was no miscarriage of justice in the introduction of evidence of the defendant's prior convictions. In his testimony, the defendant did not dispute that between January, 1985, and March, 1985, he saw Officer Williams (the arresting officer) on nine separate occasions while the defendant was in the "Combat Zone" in the early hours of the morning. He also admitted to greeting people as they drove by that area in their cars. The arresting officer testified that, on several occasions he observed the defendant approach motor vehicles containing male occupants and engage them in conversation. He also testified that, on more than one occasion, he heard the defendant ask the male occupants of the cars: "[H]ey, you want to go out," and on one occasion the defendant said he was "working." The defendant admitted that he was not employed and explained his conduct as merely talking to friends. He could only identify two of these friends and he called none to testify. He changed his testimony on cross-examination in the course of three or four questions from "I would arrange to meet some of my friends" to "I did not arrange to meet them." He explained his presence at approximately the same location each time, which the jury could have found to be a high traffic area and not the most direct route to his intended destination, by claiming that he took that route in order to avoid harassment.

In the judge's instructions to the jury, he clearly charged that the prior convictions were to be considered solely on the issue of credibility "and that is all you can draw from it." [5] He further cautioned "the fact that Mr. Boyer was previously con-

---

[5] The judge stated: "You have heard evidence of criminal convictions of the defendant. Now the law allows that criminal convictions of a defendant which existed at the time the crime was committed may be offered to show that that person is not a credible person and that is all you can draw from it, the fact that Mr. Boyer was previously convicted of prostitution does not mean that he is a prostitute. It cannot be used as evidence to determine that he committed this crime. The only thing you can use it for is to determine whether he is a truthful person. Was he telling the truth when he testified. It is for you to say what weight you will give to that evidence in determining the question of Mr. Boyer's credibility. You will not consider . . . if you find yourselves in the jury room saying 'well, he must have been soliciting because he has been convicted of being a prostitute to know' you are doing violence to your oath, and you took a solemn oath."

victed of prostitution does not mean that he is a prostitute. It cannot be used as evidence to determine that he committed this crime." The instructions clearly directed the jury away from any tendency that might exist to use the evidence in an impermissible way. Finally, contrary to the defendant's assertion, the Commonwealth's counsel did not misuse the evidence of the defendant's prior convictions. He clearly referred to it in reference to the defendant's credibility. "I would ask you to decide whether somebody who had that type of background is capable of telling the truth or whether he spoke the truth from the stand." There was no substantial risk of a miscarriage of justice.

4. *Judge's comments.* The defendant contends that he was denied a fair trial since the judge's comments indicated a bias against homosexuals and against the credibility of this defendant in particular. Because there was no objection to the comments or the jury instructions, the only issue before us is whether such comments as were made created "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Preziosi,* 399 Mass. 748, 751 (1987). *Commonwealth* v. *Freeman,* 352 Mass. 556 (1967). The judge's comments do not on their face show bias against homosexuals and there is no indication that they were said in a demeaning or derogatory sense. The judge's comment that "Mr. Williams [the arresting officer] is not on trial here, Mr. Boyer is" was unnecessary and would have been better left unsaid. In view of the charge, however, any unfair implication arising from that remark did not create a substantial risk of a miscarriage of justice. The judge instructed the jury that if he had made any comments during the trial, "they are not to be taken by you as any indication of the Court's opinion as to how the case should result. If you believe I have expressed such an opinion, disregard it totally." The judge also cautioned that the defendant was not charged with wearing female clothing, walking in the "Combat Zone" or conversing with friends, but rather with common night walking. He instructed on the presumption of innocence, the Commonwealth's burden of proof beyond a reasonable doubt, and the jury's duty to consider the case only on the evidence. Thus, considering

the charge as a whole, in light of the evidence in the case, the judge's comments created no substantial risk of a miscarriage of justice.

*Judgments affirmed.*