COMMONWEALTH *VS.* WILLIAM GLADNEY.

No. 90-P-1514

Suffolk. December 8, 1992. - February 18, 1993.

Present: SMITH, FINE, & IRELAND, JJ.

*Evidence,* Prior conviction, Judicial discretion. *Practice, Criminal,* Impeachment by prior conviction, Instructions to jury, Assistance of counsel. *Witness,* Impeachment. *Assault with Intent to Murder. Intent. Malice. Assault with Intent to Kill.*

At the trial of indictments charging assault with intent to murder, while armed, and other serious offenses, the judge did not err in admitting, for impeachment purposes under G. L. c. 233, § 21, Third, evidence of the defendant's prior Federal conviction for possession of heroin with intent to distribute, on which he had received a determinate sentence of seven years in Federal prison, where the Federal prison sentence had expired within the ten years prior to the defendant's testifying. [155-157]

At the trial of indictments charging assault with intent to murder, while armed, and other serious offenses, the judge's admitting, for impeachment purposes, evidence of the defendant's prior Massachusetts convictions which had been rendered inadmissible under G. L. c. 233, § 21, First and Second, by the passage of time did not, in the circumstances, result in prejudicial error. [157-158]

At the trial of indictments charging assault with intent to murder, while armed, and other serious offenses, in which defense counsel failed to object to the judge's instructions to the jury, there was no substantial risk of a miscarriage of justice created by the judge's instructions with regard to the essential elements of the crime of assault with intent to murder and with regard to the Commonwealth's burden of proof. [158-160]

There was no merit to a criminal defendant's claim that he had received ineffective assistance of counsel in that his trial counsel, when submitting requests to the trial judge for instructions to the jury, had proposed incorrect instructions which the judge then adopted, where no prejudice was demonstrated from the incorrect instruction. [160-161]

INDICTMENTS found and returned in the Superior Court Department on September 12, 1988.

The cases were tried before *Patrick J. King,* J.

*Bruce Ferg* for the defendant.

*David B. Mark*, Assistant District Attorney, for the Commonwealth.

SMITH, J.    The defendant was the subject of several indictments arising out of a shooting incident: (1) two indictments for assault with intent to murder, while armed, one naming George Lotti as a victim and the other naming Paul McLaughlin; (2) one indictment for assault by means of a dangerous weapon on McLaughlin; (3) one indictment for assault and battery by means of a dangerous weapon on Lotti; and (4) one indictment for unlawfully carrying a handgun. A Superior Court jury convicted the defendant of all five indictments. On appeal, the defendant claims that the judge erred in allowing the impeachment of the defendant by prior criminal convictions and in instructing the jury on assault with intent to murder. He also claims ineffective assistance of counsel.

From the evidence introduced at trial, the jury could have found the following facts. On Sunday, August 14, 1988, Lotti and McLaughlin, both off-duty Boston police officers, and four other men were assisting in the construction of a beer cooler at a package store in the Kenmore Square area of Boston. The store was closed. Sometime in the afternoon, a man, later identified as the defendant, walked into the store. Although the defendant was told that the store was closed, he walked over to a refrigerated case and began pulling out drinks. Lotti informed the defendant that he was a Boston police officer and that the store was closed. A verbal exchange between Lotti and the defendant escalated into a struggle. The two were separated by the other men present in the store.

After the struggle, the defendant complained that he had hurt his eye and also had lost a gold chain and a bracelet. The chain was found and returned to the defendant, but the bracelet was not found. As the defendant was escorted to the door, he told one of the men, "You haven't heard the last of this." Once he was outside the door, the defendant turned and yelled, "It ain't over yet." The men locked the door be-

hind them and went back to work. Lotti and McLaughlin went outside to cut pieces of insulation for the beer cooler.

Approximately thirty to forty minutes later, while Lotti and McLaughlin were working outside the store, three men, including the defendant, approached them. McLaughlin, who was facing the men, said to Lotti, "Look, we have company." As Lotti looked toward the men, he observed the defendant raise a gun and aim it directly at him. Both Lotti and McLaughlin immediately ran for the store. McLaughlin yelled to the persons inside the store, "He's got a gun."

Lotti heard two shots as he and McLaughlin were running. Both shots went by Lotti's head and hit the door frame. Once in the store, Lotti yelled to the other men to get out of the store. Lotti looked over his shoulder and saw the defendant at the doorway looking into the store. When the defendant saw Lotti, he fired again. The first shot went by Lotti's left ear. The next shot struck him in the shoulder. The defendant then left the scene. Lotti was taken to the hospital where he was treated. Each of the men who were present in the store identified the defendant as the shooter; they did so through photographs, composites, a lineup, or some combination of the three. The gun used in the shooting was turned over to the Federal Bureau of Investigation by a confidential informer named "Lennie."

1. *Introduction in evidence of defendant's prior criminal convictions.* The defendant testified that he had been at the store, fought with some of the men, and, in the process, lost his bracelet. When he left, he told the men, "You haven't heard the end of this. I'm going to have what's mine." The defendant further testified that he returned with two other men to retrieve his bracelet. One of the men who accompanied him was named Lennie. As the defendant was walking toward Lotti, he heard two "bangs." He looked around and saw that Lennie had a pistol. The defendant yelled at Lennie, "What the hell are you doing?" and ran from the scene. The defendant was arrested one week later. He denied that he shot Lotti and testified that the only person with a gun was Lennie.

a. *Prior State convictions.* The defendant testified in the instant case in July, 1989. During that testimony, five prior Massachusetts convictions were placed in evidence for the purpose of impeaching his credibility. The defendant was convicted of those offenses on August 24, 1974, almost fifteen years earlier. Four of the offenses were misdemeanors; the fifth offense was a felony on which the defendant received a suspended sentence. The defendant argues that evidence of those prior convictions was inadmissible because (1) the convictions were time-barred and (2) their admission was an abuse of discretion.

Appellate counsel for the Commonwealth concedes that the Massachusetts convictions should not have been admitted. See G. L. c. 233, § 21, First and Second.[1] "The defendant had no criminal conviction within either five or ten years of the time he testified in the present case in 198[9] that might have revived the stale [1974] convictions to make

---

[1]General Laws c. 233, § 21, First and Second, as amended by St. 1950, c. 426, states in relevant part:

"The conviction of a witness of a crime may be shown to affect his credibility, except as follows:

"First, The record of his conviction of a misdemeanor shall not be shown for such purpose after five years from the date on which sentence on said conviction was imposed, unless he has subsequently been convicted of a crime within five years of the time of his testifying.

"Second, The record of his conviction of a felony upon which no sentence was imposed or a sentence was imposed and the execution thereof suspended, or upon which a fine only was imposed, or a sentence to a reformatory prison, jail, or house of correction, shall not be shown for such purpose after ten years from the date of conviction, if no sentence was imposed, or from the date on which sentence on said conviction was imposed, whether the execution thereof was suspended or not, unless he has subsequently been convicted of a crime within ten years of the time of his testifying. For the purpose of this paragraph, a plea of guilty or a finding or verdict of guilty shall constitute a conviction within the meaning of this section . . . ."

Here, evidence of the prior misdemeanor offenses was not admissible because more than five years had passed from the date on which sentences on those offenses had been imposed, and the defendant had not subsequently been convicted of a crime within five years of the time of his testifying (July, 1989). The felony conviction was not admissible because the defendant received a suspended sentence in 1974, and he had not subsequently been convicted of a crime within ten years of the time of his testimony.

them admissible for impeachment purposes." *Commonwealth v. Childs*, 23 Mass. App. Ct. 33, 35 (1986).

b. *Prior Federal conviction.* On February 7, 1977, in Federal court, the defendant was convicted of a felony: possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1976). At that time, the penalty for that offense was a "term of imprisonment of not more than fifteen years, a fine of not more than $25,000, or both." The sentencing judge also was required to impose a special parole term of at least three years in addition to the term of imprisonment. After his conviction, the defendant was sentenced to seven years in Federal prison, plus three years of special parole.

At the defendant's 1989 trial, the subject of this appeal, the judge allowed evidence of the prior Federal conviction to be admitted under G. L. c. 233, § 21, Third. That portion of the statute states, in relevant part:

> "The record of [a defendant's] conviction of a felony upon which a state prison sentence was imposed shall not be shown [to affect credibility] after ten years from the date of expiration of the minimum term of imprisonment imposed by the court, unless he has subsequently been convicted of a crime within ten years of the time of his testifying."

The defendant claims that the prior Federal conviction was not admissible because he had not been sentenced to "state prison" for the Federal offense. That argument fails; it has long been held that Federal and out-of-State convictions are admissible under G. L. c. 233, § 21, provided that the prior convictions come within the statute. *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 310-311 (1922) (prior Federal conviction properly admitted). *Commonwealth* v. *Rondoni*, 333 Mass. 384, 385-386 (1955) (prior Connecticut conviction properly admitted). That the defendant was sentenced to a Federal prison rather than to M.C.I., Walpole (as it was known in 1977), does not render the prior Federal offense inadmissible under G. L. c. 233, § 21, Third.

The defendant also claims that the prior Federal conviction was not admissible under G. L. c. 233, § 21, Third, and was time-barred under G. L. c. 233, § 21, Second. General Laws c. 233, § 21, Third, sets the time limit for the use of a felony conviction as "after ten years *from the date of expiration of the minimum term of imprisonment*" (emphasis added). The defendant notes that his Federal sentence was a flat sentence, without minimum and maximum terms, similar to sentences to the reformatory (M.C.I., Concord) imposed in Massachusetts courts. Because the Federal sentence lacked a minimum term of imprisonment, the defendant claims that the 1977 Federal conviction does not fall under G. L. c. 233, § 21, Third, but rather falls under G. L. c. 233, § 21, Second. The latter paragraph states that a conviction shall not be used to affect credibility "after ten years *from the date of conviction* . . . unless [the witness] has subsequently been convicted of a crime within ten years of the time of his testifying . . ." (emphasis added) (see note 1, *supra*). Because he testified in July, 1989, more than ten years after his 1977 Federal conviction, and he had not been convicted of any crime between 1977 and 1989, the defendant argues that the prior Federal conviction was not admissible. We disagree.

That Federal courts in 1977 (and today) imposed determinate sentences for serious crimes does not, by itself, render the defendant's prior Federal conviction admissible only under G. L. c. 233, § 21, Second. Rather, it is necessary to examine the record of conviction itself to determine whether it is admissible under G. L. c. 233, § 21, Third.

The defendant's conviction in the Federal court was for a serious crime. As a result, he received a seven-year sentence to a Federal prison. We think that, considering the seriousness of the crime and the length of the sentence, the Federal conviction was equivalent to a Massachusetts conviction where a defendant would have received a State prison sentence. In these circumstances, the absence of a minimum sentence does not require that the prior Federal conviction only be admissible under G. L. c. 233, § 21, Second. It fol-

lows that the time limit of ten years does not run from the date the Federal sentence was imposed (1977), as required by G. L. c. 233, § 21, Second; rather, we hold that the time limit of ten years runs from the expiration of the Federal sentence (1984), as required by G. L. c. 233, § 21, Third. To hold otherwise would bar the admission in evidence for the purpose of affecting a witness' credibility of prior Federal convictions for serious offenses where substantial sentences were imposed. We do not think that was the intent of the Legislature in drafting G. L. c. 233, § 21. It was not error in these circumstances to allow the use of the Federal conviction.[2]

c. *Did the improper admission in evidence of the prior Massachusetts convictions amount to prejudicial error?* We have held that the prior Massachusetts convictions should not have been allowed in evidence. We are not persuaded by the defendant's argument that their admission created prejudicial error and that he is therefore entitled to a new trial.

Here, the evidence of the defendant's guilt was overwhelming. The defendant admitted that he returned to the store with two companions. Several witnesses, including Lotti and McLaughlin, testified that they saw the defendant shoot the gun at Lotti and at McLaughlin. McLaughlin identified the defendant standing in the doorway with a gun just before he shot Lotti.

The prior Federal conviction was properly admitted in evidence for the limited purpose of affecting the defendant's credibility. At the time the prior Massachusetts convictions and the Federal conviction were admitted in evidence, the judge carefully instructed the jury as to that limited purpose. He repeated those instructions in his charge to the jury. "The instructions clearly directed the jury away from any tendency that might exist to use the evidence in an impermissible way." *Commonwealth* v. *Boyer*, 400 Mass. 52, 59 (1987). Further, in his closing argument, the prosecutor

---

[2]In addition, the judge did not abuse his discretion in allowing the Federal conviction in evidence. *Commonwealth* v. *Maguire*, 392 Mass. 466, 471 (1984).

made no reference to the prior convictions. In these circumstances, the improper admission of the prior Massachusetts offenses did not result in prejudicial error.

2. *The judge's instructions on the assault with intent to murder indictments.* The defendant claims that the judge misinstructed the jury on the assault with intent to murder indictments. He contends that the instructions (1) failed to require that the defendant have a specific intent to kill, (2) incorrectly defined malice, and (3) did not require the prosecution to disprove provocation beyond a reasonable doubt.

a. *Specific intent portion of instruction.* The instructions given were as requested by the defendant and, therefore, were not the subject of an objection.[3] Where there is no objection to the judge's instructions, we assess the defendant's claim under the substantial risk of a miscarriage of justice standard. *Commonwealth* v. *Almon*, 30 Mass. App. Ct. 721, 724-725 (1991). We "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Murray*, 396 Mass. 702, 705 (1986), quoting from *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980).

In *Commonwealth* v. *Henson*, 394 Mass. 584, 590-591 (1985), and its progeny, the court held that the elements of the crime of assault with intent to murder are assault, specific intent to kill, and malice. Here, the judge instructed the jury that, in order for the Commonwealth to prove that the defendant was guilty of the crime of assault with intent to murder, it must show assault, specific intent to *murder*, and malice.

It was error for the judge to use the word "murder" instead of "kill" when describing the specific intent necessary for the Commonwealth to prove an assault with intent to murder. *Commonwealth* v. *Cowie,* 28 Mass. App. Ct. 742, 745 (1990)("[t]he reason [an] instruction on specific intent

---

[3]Ordinarily, we would not review an instruction requested by defense counsel. We do so here out of an abundance of caution and fairness and because the defendant claims that the incorrect instruction resulted from trial counsel's ineffectiveness. See part 3 of this opinion, *infra*.

to kill is considered critical in the 'assault with intent' crimes is that commission of the crime of murder or manslaughter does not necessarily implicate an actual intent to kill").

In order to determine whether the error resulted in a substantial risk of a miscarriage of justice, we view its impact "in the context of the entire trial." *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986). "In the performance of this task, we pay particular attention to those issues actively contested at trial . . . [because] whether a particular element of a crime was contested at trial is important to a determination whether a trial error resulted in a substantial risk of a miscarriage of justice." *Ibid.*[4]

Here, whether the gunman possessed the specific intent to kill Lotti and McLaughlin was not a live issue at trial. Rather, the identity of the gunman (the defendant claimed Lennie was the gunman) was the only live issue. Consequently, the erroneous instruction on the focus of specific intent "did not relate to an issue actively contested at trial, [and] no substantial risk of a miscarriage of justice resulted from the erroneous portion of the jury charge." *Ibid.* [5]

b. *Instruction on malice.* Proof of "malice" is another essential element of the crime of assault with intent to murder. *Commonwealth* v. *Henson*, 394 Mass. at 591. In the context of the entire instruction, the judge correctly instructed the jury on malice, i.e. "absence of justification, excuse, and mitigation." *Ibid.*

---

[4]In *Commonwealth* v. *Gabbidon, supra,* the court held that the judge's charge was erroneous because it permitted the jury to convict the defendant of assault with intent to kill without finding a specific intent to kill. The court ruled that the error did not create a substantial risk of a miscarriage of justice because the only live issue in the case was the identity of the gunman.

[5]"Murder is a word with a sinister connotation and one may suppose that the judge's instruction to the jury that they were to consider whether the defendant had formed the specific intent to murder . . . ," *Commonwealth* v. *Cowie*, 28 Mass. App. Ct. at 744, would leave the jury with the impression that the Commonwealth had a heavier burden (to prove a specific intent to murder) than it actually had. It could be argued, therefore, that the erroneous instruction benefited the defendant rather than prejudiced him. We do not rely on that ground, however, in deciding that the instruction was harmless error.

c. *Instruction on provocation.* The judge instructed the jury on the lesser included offense of assault with intent to kill. In regard to that offense, he informed the jury that the Commonwealth had to prove beyond a reasonable doubt that the defendant shot at Lotti and McLaughlin with the specific intent to kill but that there need not be a showing of malice. *Commonwealth* v. *Henson,* 394 Mass. at 591 ("in the lesser crime [assault with intent to kill] there need be no proof of malice and thus only such an intention to kill as would amount to voluntary manslaughter if the victim died").

In order to prove the greater crime, assault with intent to murder, the Commonwealth had the burden of disproving provocation: it had to show that the defendant acted with malice. Malice, "as the element differentiating assault with intent to murder from assault with intent to kill, can mean only the absence of mitigation." *Commonwealth* v. *Nardone,* 406 Mass. 123, 131 (1989).

We reject the defendant's claim that the judge failed to instruct the jury in regard to the Commonwealth's burden. The judge repeatedly emphasized that the Commonwealth bore the burden of proof, and not once did he shift the burden on the issue of provocation to the defendant.

3. *Ineffective assistance of counsel.* The defendant's trial counsel submitted requests for instructions to the judge. In regard to the essential elements of assault with intent to murder, the judge adopted the defendant's trial counsel's instruction in its entirety. As a result, he misinstructed the jury when he informed them that the Commonwealth had to prove "specific intent to *murder*" rather than "specific intent to kill". See part 2a of this opinion, *supra.* Appellate counsel claims that the defendant received ineffective assistance of counsel because trial counsel drafted incorrect instructions.

It is the duty of the trial judge to instruct the jury correctly on the law pertinent to the issues in the case. *Commonwealth* v. *Batchelder,* 407 Mass. 752, 759 (1990). In performing that important function, the judge must first make sure that he or she knows the law applicable to the issues. Requests for instructions submitted by either side may

be helpful in informing the judge as to the law to be applied, but judges should always satisfy themselves that the requests correctly state the law pertinent to the issues. This is true even when the request is submitted by trial counsel who has had considerable experience in the criminal law field, as was the case here.

In this opinion, we have already ruled that the error did not amount to a substantial risk of a miscarriage of justice because it did not relate to a live issue at trial. We therefore fail to see how prejudice resulted from the incorrect instruction drafted by trial counsel. *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979). Further, the defendant does not argue that he was deprived of an "otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant's claim is without merit.

*Judgments affirmed.*