# DECISIONS

### OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

COMMONWEALTH *vs.* GEORGE THOMAS LAVOIE.

No. 97-P-1753.

Hampden. October 6, 1998. - May 27, 1999.

Present: PORADA, LENK, & SPINA, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Practice, Criminal,* Impeach-
ment by prior conviction, Instructions to jury. *Evidence,* Prior conviction,
Fresh complaint. *Witness,* Child.

At the trial of indictments alleging sexual abuse of children in which cred-
ibility was a critical issue, the Commonwealth improperly offered and the
judge improperly admitted in evidence a thirteen year old conviction of the
defendant, in violation of G. L. c. 233, § 21, and in circumstances in
which the conviction was not otherwise admissible; where the prosecutor
underscored the conviction in her closing argument and the judge gave an
incorrect instruction to the jury regarding their consideration of the convic-
tion, a new trial was required. [3-6]
At the trial of indictments alleging sexual abuse of children, the judge did not
abuse her discretion in admitting certain testimony as fresh complaint
evidence. [6-8]

INDICTMENTS found and returned in the Superior Court Depart-
ment on November 2, 1995.

The cases were tried before *Mary-Lou Rup*, J.

*James Hammerschmith*, Committee for Public Counsel Services, for the defendant.

*Lori K. Odierna*, Assistant District Attorney, for the Commonwealth.

LENK, J. After a jury trial, the defendant, George Lavoie, was convicted on five indictments charging forcible rape of his two minor daughters and four indictments charging indecent assault and battery on them. The defendant was acquitted on one indictment charging rape, four indictments charging indecent assault and battery, and one indictment charging open and gross lewdness.[1]

The defendant fathered three children by a former wife — Thomas, born in 1979, Rebecca in 1980, and Patricia in 1982.[2] When Patricia was a few months old, the defendant and his former wife (Louise) were separated. Louise retained sole custody of their children, and the couple eventually divorced. After moving out of the marital home in 1982, Lavoie lived at various addresses in western Massachusetts. His older brother lived with him at two of the locations, and the defendant's fiancée lived with him at his most recent address. Although there was no court ordered visitation, the three children voluntarily visited the defendant on a weekly basis, even after they had been adopted by their mother's new husband in 1988. The visits typically lasted from a Friday night to a Saturday afternoon. The three children did not always visit their father together — sometimes Thomas went with a friend, sometimes it was just Rebecca and Patricia, and, after May, 1993, Patricia typically went alone. This case arises from allegations by Rebecca and Patricia that the defendant raped and indecently assaulted them during these weekend visits.

The defendant claims on appeal that he is entitled to a new trial because (1) the trial judge wrongly admitted evidence of a

---

[1]The Commonwealth charged the defendant with forcible rape of minors, G. L. c. 265, § 22A (six indictments), indecent assault and battery on minors, G. L. c. 265, § 13B (eleven indictments), and open and gross lewdness, G. L. c. 272, § 16 (one indictment). Upon the Commonwealth's motion, the trial judge dismissed three indictments charging indecent assault and battery as duplicative of three rape indictments. The jury subsequently found the defendant guilty on five of the six rape indictments and four of the remaining eight indecent assault and battery indictments, acquitting him on the remaining indictments.

[2]Pseudonyms. See G. L. c. 265, § 24C.

prior conviction, the prosecutor unfairly distorted the meaning of that prior conviction in her closing argument, and the judge improperly characterized the nature of the conviction; and (2) the judge improperly admitted so-called "fresh complaint" testimony and then wrongly instructed the jurors about how to determine whether the complaint was fresh.

*Prior conviction.* During direct examination, the defendant denied having ever physically abused his ex-wife. At sidebar before cross-examination, the prosecutor told the judge that the defendant had been convicted of malicious destruction of property for breaking down Louise's door in the course of a domestic quarrel when they were still married and living in the same home.[3] The prosecutor argued that the defendant's testimony raised the issue whether he was in fact abusive or violent[4] and sought leave to introduce evidence of the prior conviction on this basis, conceding that his prior conviction would otherwise be inadmissible.[5] The defendant objected, contending that a conviction of malicious destruction of property was not probative of whether he had been physically abusive toward his wife. The judge admitted the evidence "not in the normal sense of a prior conviction [but] to the extent that [the defendant] claims at least that he was never abusive toward his wife." During the subsequent cross-examination, the defendant acknowledged that in 1983 he had been convicted of malicious destruction of property in the course of a domestic quarrel.

---

[3]The prosecutor based her statement on a prior conversation with Louise. Apparently, the prosecutor did not proffer a certified or other copy of that conviction. Neither the date of nor details concerning the conviction is in the record before us.

[4]The Commonwealth argued at trial but not on appeal that the defendant's testimony that he never physically abused his wife was evidence of his good (nonviolent) character, and that evidence of his prior conviction could be admitted in rebuttal. Even if it were to be assumed that the defendant's character was thereby put in issue, the prosecutor nonetheless may not rebut that evidence by "reference to specific acts of prior criminal misconduct by the defendant." *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33, 39 (1986), *S.C.*, 400 Mass. 1006 (1987). See *Commonwealth* v. *Turner*, 371 Mass. 803, 810 (1977).

[5]Although she did not specify why, the prosecutor presumably was referring to the fact that the conviction is too remote in time to be admitted under G. L. c. 233, § 21. In its brief on appeal, the Commonwealth acknowledged that "[t]he prosecutor did not introduce such evidence pursuant to G. L. c. 233, § 21 to impeach the defendant's credibility." Indeed, at trial the prosecutor told the judge that there is a prior record that "wouldn't have otherwise been admissible."

Throughout cross-examination, however, the defendant continued to deny ever having physically abused his former wife.

General Laws c. 233, § 21,[6] "prescribes time limits after which convictions cannot be used to impeach a witness." Liacos, Massachusetts Evidence § 6.9.2, at 304 (6th ed. 1994). Evidence of Lavoie's prior conviction of malicious destruction of property was not admissible under G. L. c. 233, § 21, to impeach Lavoie because the sentence was apparently imposed approximately thirteen years before trial and there had been no subsequent conviction. While inadmissible under the statute, evidence of the prior conviction nonetheless could have been admitted for relevant, probative, nonimpeachment purposes. *Commonwealth* v. *Jacobs*, 6 Mass. App. Ct. 867, 868 (1978).[7] The Commonwealth suggests that such was the case here.

In essence, the Commonwealth's argument is that by testifying on direct examination that he had never physically abused his ex-wife, the defendant put his prior conviction in issue.[8] Certainly, the defendant himself was not asked on direct examination about a prior record and did not during cross-

---

[6]Pursuant to G. L. c. 233, § 21, "[t]he conviction of a witness of a crime may be shown to affect his credibility, except . . . the record of his conviction of a felony upon which . . . a sentence was imposed and the execution thereof suspended . . . shall not be shown for such purpose after ten years from the date on which sentence on said conviction was imposed, . . . unless he has subsequently been convicted of a crime within ten years of the time of his testifying."

[7]For example, evidence of a defendant's prior conviction may be introduced when the defendant puts the fact of prior conviction in issue, *Commonwealth* v. *Jacobs, supra* (after defendant repeatedly denied having any prior record, prosecutor was permitted to impeach him with his prior convictions), when the defendant's character is itself in issue, *Care and Protection of Frank*, 409 Mass. 492, 494-495 (1991) (convictions of operating under the influence and possession of marijuana are evidence of drug and alcohol abuse, which is relevant to a mother's parental fitness), to establish "fully what occurred during the main episode in suit" as well as the victim's frame of mind, *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973) (in describing what happened to her, victim testified that the defendant talked about his treatment when he was in prison), and to undermine expert testimony about the defendant's sanity, *Commonwealth* v. *Killelea*, 370 Mass. 638, 650 (1976).

[8]At oral argument, appellate counsel abandoned the argument made in its brief that defense counsel's assertion in his opening statement (not the *defendant's own testimony*) that the defendant had no prior record was sufficient to put the defendant's prior conviction in issue.

examination deny having a prior record,[9] rendering the Commonwealth's contention unpersuasive. We conclude from our review of Lavoie's testimony that evidence of his prior conviction of malicious destruction of property was admitted only to impeach Lavoie, and not for any other relevant probative purposes. This was underscored, first at sidebar, when the trial judge said she would admit evidence of the defendant's prior conviction to impeach the defendant's statement that he was never abusive toward his wife. Then, immediately after the defendant acknowledged the prior conviction, the judge instructed the jury that they could consider the conviction "on his credibility with regard to earlier statements that he may have made during the course of his testimony." Later, during her final jury instructions, the judge told the jury that they could consider evidence that the defendant was previously convicted of a criminal offense "only as to Mr. Lavoie's credibility, if you think it has any relevance or significance in that regard, . . . [and not] as any evidence that [the defendant] has a bad character or a propensity or tendency to commit the present offenses of which he stands accused."

Impeachment by a prior conviction in violation of G. L. c. 233, § 21, is nonconstitutional error. *Commonwealth* v. *Diaz*, 383 Mass. 73, 75-82 (1981). "Nonconstitutional errors, preserved . . . below, are reviewed according to a nonprejudicial error standard. An error is nonprejudicial only '[if] . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . .' " *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). See *Commonwealth* v. *Young*, 22 Mass. App. Ct. 237, 241 (1986).

"Impeachment of a defendant's credibility by means of prior convictions is always subject to possible misconstruction by a jury, who may improperly regard the impeachment as substantive evidence of guilt, despite careful limiting instructions." *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33, 38 (1986), *S.C.*, 400 Mass. 1006 (1987). The defendant's credibility was

---

[9]Evidence of domestic abuse was only relevant in the context of Rebecca's testimony to explain her delay in reporting the alleged sexual abuse. Her sister, Patricia, understandably (she was less than a year old when her parents separated) did not testify to any memories of violence between her biological parents. See discussion *infra* at 7-9.

critical in this case because the Commonwealth did not establish guilt by overwhelming evidence. Compare *Commonwealth* v. *Gladney*, 34 Mass. App. Ct. 151, 157 (1993). This case was essentially a credibility contest with Rebecca and Patricia accusing the defendant of committing acts which he expressly denied. The Commonwealth's only corroborative evidence was testimony about Patricia's fresh complaint, made twenty-six months after the last alleged incident of abuse. The defense offered testimony from the defendant's brother, fiancée, and son, all of whom had been in the defendant's home when he was purportedly molesting his daughters and who testified that they saw no signs of abuse and did not notice anything suspicious about the relationship between the defendant and his daughters.

The risk of jury misuse of the improperly admitted evidence increased with several other missteps at trial. First, the prosecutor inquired of the defendant as to any prior convictions, asking, "Now, sir, there was also testimony that you had never been in trouble with the law, correct?" This question may have erroneously suggested that the defendant himself had denied having a criminal record.[10] The prosecutor underscored the prior conviction in her closing by arguing that the defendant's conviction contradicted his assertion that he was never abusive toward his wife. The judge also told the jury that they could consider testimony regarding the defendant's alleged abuse of his ex-wife or damage to property belonging to her only "on the issues of Patricia's state of mind with regard to the promptness of any complaint that she may or may not have made to Officer Chapin eventually or to her mother earlier."

In light of all this, and "[b]ecause the decisive, if not sole, issue at trial was witness credibility . . . we cannot say 'with fair assurance' that the improperly admitted evidence did not have a significant impact on the jury's decision." *Commonwealth* v. *Ford*, 397 Mass. 298, 302 (1986). A new trial is required.

*Fresh complaint testimony.* Because the matter may arise again at any retrial, we address the defendant's claim that fresh complaint testimony was improperly admitted. Upon the defendant's objection before trial to the prosecutor's proposed use of fresh complaint testimony, the trial judge conducted a

---

[10]Defense counsel had asserted in his opening statement that the defendant had no prior record. The Commonwealth's recourse was to object to it and request a curative instruction, not to question the defendant about it. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 519-520 (1987).

voir dire examination of Rebecca, Patricia, Louise, Officer Chapin, and one other proposed fresh complaint witness. The trial judge learned that Rebecca and Patricia returned from two weeks at camp in July, 1995, and, upon their return, Rebecca told their mother that the defendant had sexually abused her during weekend visits. When Louise asked Patricia if the defendant had also abused her, Patricia did not give a verbal response, but only sobbed. Officer Chapin questioned the girls after Louise notified the police. Patricia told him that her father's sexual abuse began when she was four years old and continued until she was eleven years old, the last incident occurring in May, 1993. Patricia continued to visit the defendant until she went away to camp in July, 1995, approximately twenty-six months after the last alleged incident of abuse. Rebecca told Officer Chapin that the defendant sexually abused her from age six through age ten, the last incident occurring sometime in 1990. After hearing the proposed witnesses, the judge allowed fresh complaint testimony only from Louise and Officer Chapin and only about Patricia's accusations.[11]

The defendant argues that the trial judge improperly admitted the fresh complaint testimony about Patricia's allegations because a twenty-six month delay between the last incident of abuse and her complaint was too long for the complaint to be considered "fresh" as a matter of law. He did not renew this objection at trial.

"There is no absolute rule of law as to the time within which a sexual assault victim must make her first complaint for that complaint to be admissible in evidence as a fresh complaint. 'The determination whether statements are sufficiently prompt to constitute fresh complaints rests within the sound discretion of the trial judge. The test is whether the victim's actions were reasonable in the particular circumstances of the case.' " *Commonwealth* v. *Amirault*, 404 Mass. 221, 228 (1989) (citations omitted), *S.C.*, 424 Mass. 618 (1997), quoting from *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987). *Commonwealth* v. *Fleury*, 417 Mass. 810, 813-815 (1994).

Patricia first accused her biological father of sexually abusing her approximately twenty-six months after the last alleged

---

[11]At trial, the prosecutor withdrew her request to offer testimony about Rebecca's fresh complaint, conceding that the five-year period between the last incident of abuse and the complaint was too remote. This seems the correct result.

incident of abuse. "Courts have not insisted on great prompt-
ness for fresh complaints in prosecutions involving child sexual
abuse. Because child sexual abusers are often related to . . . the
child victim, and because the victim's silence has been induced
by threats or coercion, courts are flexible in applying the usual
fresh complaint strictures." *Amirault*, 404 Mass. at 229 (cita-
tions omitted). The abuser's threats or coercion may be express
or implied. *Commonwealth* v. *Brenner*, 18 Mass. App. Ct. 930,
932 (1984). "The cases involving child sexual abuse . . . give[]
special consideration to the natural fear, ignorance, and
susceptibility to intimidation that is unique to a young child's
make-up." *Amirault, supra.* Although Patricia was thirteen years
old when she made the complaint, the judge found that the
relationship between Patricia and the defendant was inherently
coercive because of the "ongoing lengthy period of time within
which she's testified . . . that these incidents went on," and
that was ample reason why she might not have made a
complaint earlier. "In cases where a young victim has been
under the control of, and in reasonable fear of, a defendant who
is a close relative, the promptness of a complaint is usually
measured from the date when the victim leaves the defendant's
control." *Commonwealth* v. *Comtois*, 399 Mass. at 672 n.9. In
this case, the trial judge found Patricia was out of the
defendant's control for only two weeks before she complained.
Although the time period surely approaches the outer bounds of
the limits of prior cases, we nonetheless conclude that the judge
made a careful assessment of the relevant factors[12] and properly
exercised her discretion in admitting the testimony.

  The defendant argues, and the Commonwealth agrees, that
the judge's instruction to the jury on how to determine whether
Patricia's complaint was reasonably prompt was in error. As
discussed above, the judge told the jurors that they could
consider evidence that the defendant allegedly abused Louise in
determining the promptness of Patricia's complaint. Rebecca,
and not Patricia,[13] had testified at trial and at the pretrial voir
dire that her complaint was delayed because of the fear she felt

  [12]In assessing the reasonableness of a delayed complaint, the trial judge
should consider "the child's age, the length of time the child has been away
from an abusive setting, whether the perpetrator used threats or coercion, and
whether the perpetrator is a relative or close friend of the child." *Com-
monwealth* v. *Dockham*, 405 Mass. 618, 626 (1989).

  [13]There was no evidence that Patricia ever witnessed any violence between

after witnessing the defendant abuse her mother; any alleged domestic abuse was accordingly irrelevant to whether Patricia's complaint was prompt. Considered in the context of the entire charge, *Commonwealth* v. *Owens*, 414 Mass. 595, 607 (1993), this erroneous and prejudicial instruction, to which no objection was made, did not itself create a substantial risk of a miscarriage of justice but should not be given at any retrial.

*Judgments reversed.*

the defendant and her mother. Furthermore, the erroneously admitted conviction was in 1983, when Patricia was less than one year old.