COMMONWEALTH *vs.* ELIZABETH RODERIQUES.

No. 08-P-1392.

Bristol. February 8, 2010. - January 5, 2011.

Present: McHUGH, DREBEN, & GRAHAM, JJ.

Further appellate review granted, 459 Mass. 1106 (2011).

*Assault and Battery. Wanton or Reckless Conduct. Reckless Endangerment of a Child. Practice, Criminal,* Lesser included offense, Request for jury instructions. *Evidence,* Expert opinion.

At the trial of indictments charging assault and battery on a child and causing substantial bodily injury, in violation of G. L. c. 265, § 13J(*b*), second par., and wantonly and recklessly permitting assault and battery on a child that causes substantial bodily injury, in violation of G. L. c. 265, § 13J(*b*), fourth par., the judge's instruction to the jury on reckless endangerment of a child, in violation of G. L. c. 265, § 13L, as a lesser included offense of the offense charged in the second indictment, did not create a substantial risk of a miscarriage of justice, where, regardless of whether reckless endangerment of a child under G. L. c. 265, § 13L, is a lesser included offense of the offenses set out in G. L. c. 265, § 13J(*b*), the defendant requested the instruction, and the evidence was sufficient to support a conviction on the indictment as charged. [518-521] GRAHAM, J., dissenting.
At a criminal trial, the judge did not abuse his discretion in allowing the admission in evidence of testimony by an expert witness. [522]

INDICTMENTS found and returned in the Superior Court Department on March 3, 2005.

The cases were tried before *D. Lloyd Macdonald*, J., and a motion to vacate a conviction was heard by him.

*Colleen A. Tynan* for the defendant.

*Kristen L. Spooner*, Assistant District Attorney, for the Commonwealth.

McHUGH, J. A Bristol County grand jury returned two indictments charging the defendant, Elizabeth Roderiques, with offenses that resulted in severe injuries to her infant child. The first indictment charged her with committing an assault and battery upon a child under fourteen years of age causing substantial

bodily injury. See G. L. c. 265, § 13J(*b*), second par. The second charged her with wantonly and recklessly permitting an assault and battery upon a child that caused the child substantial bodily injury. See G. L. c. 265, § 13J(*b*), fourth par.[1] At the defendant's request and with the Commonwealth's agreement, the trial judge charged the jury that reckless endangerment of a child, see G. L. c. 265, § 13L, was a lesser included offense of the offense charged in the second indictment.

After trial, a Superior Court jury acquitted the defendant of the two offenses charged in the indictments but found her guilty of reckless endangerment of a child. The defendant then filed a motion to vacate the conviction, claiming that reckless endangerment was not a lesser included offense and that the charge she had requested was erroneous and should not have been given. The judge denied the motion and the defendant appeals, asserting that (1) reckless endangerment is not a lesser included offense of wantonly or recklessly permitting an assault and battery on a child causing substantial bodily injury; (2) there was no rational basis in the evidence to present the charge of wantonly or recklessly creating a risk of serious bodily injury to a child; and (3) the Commonwealth's expert impermissibly offered an opinion on an ultimate issue in the case. We affirm.

*Facts.* When the record is viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found that, in December, 2003, the seventeen year old defendant lived with her boyfriend, Shawn Cambria, and her infant son in a New Bedford apartment. On the afternoon of December 23, 2003, the defendant took the baby, then seven weeks of age, to a pediatrician because he was displaying flu-like symptoms and had kept her awake throughout the previous evening with his fussiness and refusal to eat. The treating physician gave her some medication, and she returned

---

[1] We note that the statute uses the disjunctive "or" to join "wantonly" and "recklessly," but the indictment uses the conjunctive "and." "Where a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways, using the conjunction 'and' in joining them." *Commonwealth* v. *Dowe*, 315 Mass. 217, 219-220 (1943). "In that case, the defendant may be convicted if it is proved that he committed the crime in any of those ways." Smith, Criminal Practice and Procedure § 15.9 (3d ed. 2007).

to her apartment. Apart from the flu symptoms and a small bruise on his cheek, nothing out of the ordinary about the infant was discovered during the visit.

During the night of December 23 and the early morning hours of December 24, the defendant, Cambria, and the baby were alone in the apartment. At some point, the defendant fell asleep with Cambria on a pull-out sofa in the apartment's living room. The baby was in a recliner on the floor close by the defendant's head. Several times during the night, the baby awakened the defendant with his fussing, and she got up to feed and change him. At one point, the defendant was awakened by the baby, who was crying because he had lost his pacifier. The defendant asked Cambria to put the pacifier back in his mouth. Cambria complied, although he told the defendant that the baby was a "crybaby" and told the infant to "stop fussing."

At approximately 9:00 A.M. on December 24, the defendant telephoned her father and, in an hysterical voice, told him that the infant's arm had been dislocated. The father and his girlfriend's daughter arrived at the apartment within minutes of the call and discovered the infant lying on a bed crying, with Cambria sitting beside him. The baby's arm was bent and red. They rushed him to a local hospital where he was examined and later airlifted to Boston Children's Hospital.

Before the airlift, two New Bedford police officers observed the baby and saw that he had a large red bruise on his upper right arm, a bruise on his nose, a bruise on his left cheek that extended to his left ear, and bruising on his abdomen and upper thighs. When the infant was finally examined at Children's Hospital, doctors discovered that he had suffered a fracture of the right upper arm, or humerus; multiple fractures to both legs; rib fractures; a compression fracture of the spine; and a fractured clavicle.

The infant's injuries fell into at least three distinct categories. The break in his right lower right leg was a so-called "bucket handle fracture," produced by a forceful pulling or twisting at the end of the limb and a frequent component of what is known as shaken baby syndrome. The compression fracture to the spine was produced by a force that traveled along the spine vertically, such as the force generated when a child is slammed down on his buttocks. The remaining fractures were of general

traumatic origin. All of the injuries would have required a significant amount of force and would have produced significant pain, producing an outcry from the baby and making him difficult to console.[2]

When interviewed by the social workers and the police, the defendant first said that the baby had slept in his bassinet that night, that she fed him at 2 A.M. and 6 A.M., and that she noticed nothing out of the ordinary until she awoke up at 9 A.M. and discovered the significant bruising on his arm. Later, the defendant said that she had slept on the sofa bed with Cambria and that the infant had been in a recliner on the floor near her head. When asked by a State police investigator if she knew who had injured the baby, the defendant responded "something to the effect of 'It wasn't me. It must have been Shawn' " (Cambria), who, she indicated, had been yelling at the baby that evening to stop crying and sometimes would "handle the baby a little more aggressively than appropriate."

For his part, Cambria said that the defendant must have hurt the baby because he had not done so. However, he did say that he had been playing "air drums" with the baby on the evening of December 23, describing "air drums" as a maneuver in which he grabbed the infant's arms and waved them around in the air as if the baby were playing drums. Cambria, who claimed to suffer from periodic blackouts, also said that it was possible that he had stepped on the baby on the recliner when he got up during the evening to use the bathroom or get a drink of water, though he did not think that had happened.

*Discussion.* Against that backdrop, the defendant first argues that reckless endangerment of a child, an offense requiring proof that the defendant "wantonly or recklessly engage[d] in conduct that create[d] a substantial risk of serious bodily injury . . . to a child or wantonly or recklessly fail[ed] to take reasonable steps to alleviate such risk where there is a duty to act," G. L. c. 265, § 13L, inserted by St. 2002, c. 322, § 2, is not a lesser included offense of G. L. c. 265, § 13J(*b*), fourth par., the

---

[2]The Commonwealth's expert and the defendant's both agreed that the injuries would have produced pain sufficient to make the baby "cry out loud hard for some period of time," though they differed in their assessment of the length of time the crying would have lasted and the point at which the baby, who was not crying by the time he arrived at the hospital, could have been consoled.

offense with which the defendant was actually charged in the second indictment.[3]

Although the Commonwealth and the defendant are sharply divided on the question, we find it unnecessary to resolve it. In our view, even if the trial judge erred in giving the instruction because § 13L is not, strictly speaking, a lesser included offense of any of the offenses set out in § 13J(b), the defendant invited the error, and no substantial risk of a miscarriage of justice arose when the judge accepted the invitation.[4]

We have discussed the concept of invited error in earlier decisions. In Commonwealth v. Knight, 37 Mass. App. Ct. 92, 99-100 (1994), for example, we faced a claim that a manslaughter conviction should be reversed because the manslaughter instruction was flawed and, although requested by the defendant, was premised on a theory our jurisprudence did not recognize. In rejecting that claim, we explained that

> "[a]s the challenged instruction was given upon the specific request of defense counsel at trial, to the extent that the is-
> sue is reviewable at all,[5] . . . the defendant on appeal
> bears a heavy burden in attempting to have his conviction

---

[3]General Laws c. 265, § 13J(b), inserted by St. 1993, c. 340, § 2, describes a number of offenses. The offense charged in the second indictment required proof that the defendant, "having care and custody of a child, . . . wantonly or recklessly permit[ted] another to commit an assault and battery upon such child, which assault and battery cause[d] substantial bodily injury" to him.

[4]The offense proscribed by G. L. c. 265, § 13L, is a misdemeanor and, therefore, does not require prosecution by indictment. See Mass.R.Crim P. 3(b), as appearing in 442 Mass. 1502 (2004). Consequently, even if § 13L does not contain a lesser included offense, inquiry into whether the instruction created a substantial risk of a miscarriage of justice is both necessary and appropriate. See Commonwealth v. Bynoe, 49 Mass. App. Ct. 687, 692-693 (2000).

[5]At this point in Knight, we cited Lannon v. Commonwealth, 379 Mass. 786, 792-793 (1980) ("The petitioner cannot now object to the judge's use of wording which his own counsel proposed for inclusion in the instructions"), and Commonwealth v. Gladney, 34 Mass. App. Ct. 151, 158 n.3 (1993) ("Ordinarily, we would not review an instruction requested by defense counsel. We do so here out of an abundance of caution and fairness and because the defendant claims that the incorrect instruction resulted from trial counsel's ineffectiveness"). In a footnote in Knight, 37 Mass. App. Ct. at 100 n.2, we also observed that "there is abundant Federal case law to the effect that invited error is not reviewable," citing several Federal decisions. As in Gladney, we proceed with our review out of an abundance of caution and fairness.

overturned. He must demonstrate at least a substantial risk
of a miscarriage of justice."

See *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 196
(1991) ("The consequences of trial tactics may not be converted
after conviction into alleged errors by the judge. . . . The less
is this so if the tactics produce some measure of success, as
they did here"); *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169,
171 (2000) ("Where the error [in giving an instruction] was
invited by the defendant, our review is limited to whether a
substantial risk of a miscarriage of justice occurred"). See also
*Commonwealth* v. *Vinnie*, 428 Mass. 161, 180 (1998) (conviction
of murder in first degree affirmed even though judge did not
instruct on murder in second degree because, in part, defendant
asked that instruction on murder in second degree be omitted).

Because the defendant requested the instruction she now chal-
lenges, we limit our review, in accordance with the cited cases, to
determining whether the instruction, if improper, created a sub-
stantial risk of a miscarriage of justice. In approaching that ques-
tion, we do not look at a theoretical case tried in some theoretical
fashion on theoretical issues and ask whether a miscarriage of
justice were possible. Instead, we look at this case and the issues
this case presented, asking whether a substantial risk of a miscar-
riage of justice in fact existed. We think it did not.

It was uncontested that the baby's injuries occurred during a
period when the defendant and Cambria were alone with him. It
was uncontested that the injuries were extensive and traumatic.
And it was uncontested that infliction of the injuries would
have caused the baby to "cry out loud . . . for some period of
time." Those uncontested facts were accompanied by strong
evidence that one of the fractures resulted from someone twist-
ing the infant's leg forcefully enough to break it, that another
resulted from a force like that produced by slamming the infant
down on his buttocks hard enough to compress a vertebra to the
point of fracture, and that the remaining fractures resulted from
the application of other forces. The nature of the injuries sug-
gested, therefore, that they occurred serially, not from applica-
tion of a single force. Finally, strong evidence of consciousness
of guilt flows from the defendant's claim that, although awakened
by the baby's fussiness at various points throughout the night,
she did not hear what all experts agreed would have been the

infant's loud cries as someone engaged in a process of breaking his bones.

That evidence, albeit circumstantial, was sufficient to support a conviction on the second indictment as charged on a theory that the defendant knew Cambria was committing assault and batteries on the child and that she wantonly or recklessly failed to take any steps to rescue him or otherwise intervene in Cambria's assaultive onslaught. See *Commonwealth* v. *Garcia*, 47 Mass. App. Ct. 419, 422-423 (1999). See generally *Commonwealth* v. *Robinson*, 74 Mass. App. Ct. 752, 759 (2009).

The essential difference between the offense as charged in the second indictment and the "lesser included offense" on which the defendant requested an instruction is that the lesser offense did not require proof that anyone battered the infant. In theory, conviction of that offense could rest on any wanton or reckless conduct by the defendant that created or failed to alleviate a substantial risk of serious bodily harm to the infant. But, as noted earlier, in assessing the likelihood of a substantial risk of a miscarriage of justice, theory gives way to reality. On this record, there was no evidence of any risk-creating conduct by the defendant apart from her failure to protect the baby from the force of Cambria's blows. Consequently, what the defendant labeled as the lesser included offense was simply a vehicle for penalizing less severely conduct that would have warranted conviction of a greater offense and imposition of a greater penalty.[6] Even if erroneously charged, therefore, the lesser included offense instruction created no substantial risk of a miscarriage of justice.[7]

---

[6] In fact, the Commonwealth's closing invited the jury to draw from the evidence an inference that the young defendant was exhausted and overwhelmed by a number of circumstances on the night that the baby was injured.

[7] The defendant also argues that even if reckless endangerment is a lesser included offense, there was no rational basis for giving the instruction because, in line with cases such as *Commonwealth* v. *Santo*, 375 Mass. 299, 305-306 (1978), such an instruction is appropriate only if there is a rational basis for acquitting the defendant of the greater charge and convicting her of the lesser. Here, she appears to maintain, the evidence provided no such rational basis. If the defendant is correct, and we might agree that she is, then the effect of the instruction under the circumstances this record reveals was to give her a benefit she sought but to which she was not entitled. She cannot now complain that bestowal of the benefit was error. See generally *Commonwealth* v. *Curtis*, 417 Mass. 619, 632 (1994); *Commonwealth* v. *Allen*, 76 Mass. App. Ct. 9, 10 n.3 (2009).

The defendant next argues that the Commonwealth's expert witness, a pediatrician named Jennifer Denton, impermissibly offered an opinion on an ultimate issue in the case when she testified that, in her opinion, the baby had not suffered "accidental injuries" and that all of his injuries could not have been caused by someone stepping on him while he slept in the recliner.

In general, expert testimony is admissible when it bears on a factual issue that is "beyond the jury's common knowledge and [the testimony] may aid them in reaching a decision." *Commonwealth* v. *Colin C.*, 419 Mass. 54, 60 (1994). See Mass. G. Evid. §§ 701, 702 (2010). "The admission of expert testimony lies 'largely in the discretion of the trial judge,' " *Commonwealth* v. *Hudson*, 417 Mass. 536, 540 (1994), quoting from *Commonwealth* v. *Maltais*, 387 Mass. 79, 93 (1982), and as a consequence, "[a] judge's decision to admit expert testimony is subject to review only for abuse of discretion." *Commonwealth* v. *Shanley*, 455 Mass. 752, 762 (2010).

Whether the injuries suffered by the baby could have been caused by someone stepping on him on a recliner was squarely within the area where professional expertise was both helpful and appropriate. While Dr. Denton's opinion that the injuries were not "accidental" is more judgmental, that testimony simply summarized testimony that could have been elicited through a long series of entirely proper hypotheticals, and it did not purport to assign responsibility for causing the injuries. In any event, "[a]n opinion within the domain of the expert's professional knowledge may be admissible even if the expert's testimony touches on the ultimate issues before the jury." *Commonwealth* v. *Woods*, 419 Mass. 366, 374-375 (1995). The judge did not abuse his discretion by allowing admission of the challenged testimony.

*Judgment affirmed.*

GRAHAM, J. (dissenting). While the Commonwealth and the defendant are divided over whether G. L. c. 265, § 13L, is a lesser included offense of G. L. c. 265, § 13J(*b*), both parties agree that the judge should not have instructed the jury on the lesser included offense. The majority finds it unnecessary to determine whether the trial judge did indeed err in giving the

instruction, and affirms the conviction under § 13L on the concept of invited error, though the court acknowledges that the doctrine lacks a strong foundation.[1]

Assuming that the doctrine of invited error applies to the defendant's claim, I conclude that the error in giving the instruction created a substantial risk of a miscarriage of justice.[2] First,

---

[1]As the majority observes, *ante* at 519 n.5, quoting from *Commonwealth* v. *Knight*, 37 Mass. App. Ct. 92, 100 n.2 (1994), "[t]here is abundant Federal case law to the effect that invited error is not reviewable." See *United States* v. *Gray*, 626 F.2d 494, 501 (5th Cir. 1980), cert. denied, 449 U.S. 1091 (1981); *United States* v. *Alexander*, 695 F.2d 398, 402 (9th Cir. 1982); *United States* v. *Benny*, 786 F.2d 1410, 1416 (9th Cir.), cert. denied, 479 U.S. 1017 (1986). While review under the concept of invited error is not an established doctrine in the Commonwealth, the language in *Lannon* v. *Commonwealth*, 379 Mass. 786, 792-793 (1980), suggests that the defendant's claim may not be reviewable because it is invited error. See *Commonwealth* v. *Gladney*, 34 Mass. App. Ct. 151, 158 n.3 (1993); *Commonwealth* v. *Knight*, *supra* at 99-100.

It is also to be noted, however, that there is case law holding that if the offense of which a defendant is convicted is not a lesser included offense of the crime charged in the indictment, the trial court does not have jurisdiction to convict and sentence the defendant of that offense and the judgment must be reversed and the verdict set aside. See *Commonwealth* v. *Rowe*, 18 Mass. App. Ct. 926, 927 (1984); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 14 (1986); *Commonwealth* v. *Farrell*, 31 Mass. App. Ct. 267, 268-269 (1991) (conviction of offense not alleged in complaint "probably jurisdictional"; if not, is substantial risk of miscarriage of justice; defendant's consent to instruction immaterial). See also *Commonwealth* v. *Robinson*, 26 Mass. App. Ct. 441, 443-444 (1988) (confines of indictment limit sentencing); *Commonwealth* v. *Ruidiaz*, 65 Mass. App. Ct. 462, 464, 465 (2006) (amendment of indictment may not broaden charge; sentence limited to crime charged in indictment). We need not be concerned with that issue here, because the offense set out in § 13L is a misdemeanor, not a felony (for which indictment is constitutionally required), see *ante* at 519 n.4, and for that reason, the error does not per se require reversal but rather consideration under the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Bynoe*, 49 Mass. App. Ct. 687, 691-693 (2000). Compare *Commonwealth* v. *Rodriguez*, 11 Mass. App. Ct. 379, 382 (1981) (to be convicted of offense not charged would "certainly" constitute miscarriage of justice); *Commonwealth* v. *Farrell*, *supra* (reversed conviction of offense not charged in complaint); *Commonwealth* v. *McGilvery*, 74 Mass. App. Ct. 508, 509, 512-513 (2009). In regard to indictments, see also *Commonwealth* v. *Peterson*, 445 Mass. 782, 788 (2006) (waiver of right to indictment must be explicit, voluntary, intelligent, and "freely and knowingly given"); *Commonwealth* v. *Dixon*, 458 Mass. 446, 451-452 (2010). See generally Smith, Criminal Practice and Procedure §§ 15.30, 15.45-15.47 (3d ed. 2007).

[2]We must evaluate the impact of the contested instruction "in the context of

because the Commonwealth tried the case on a different theory — that the defendant committed an assault and battery or wantonly and recklessly permitted another to intentionally inflict injuries on the child, in violation of § 13J(*b*) — and the offense under § 13L is not a lesser included offense of § 13J(*b*), the jury did not focus on the different, separate elements of the offense under § 13L when hearing the evidence at trial. This raises the question whether there was a full and fair consideration of the evidence in relation to the elements of the offense set out in § 13L. Further, the evidence is not as clear cut as the majority suggests.

As the majority notes, it is uncontested that the baby's injuries occurred on the night of December 23, sometime during the period in which the defendant and Cambria were alone with the child. On the night in question, the defendant and Cambria slept on the pull-out couch in the living room of the defendant's apartment, while the baby, then seven weeks old, slept on an adjacent recliner. The defendant testified that she slept with the baby close by so that she could hear him if he woke and cried out.

The majority places great emphasis on the fact that the defendant claimed to have been awakened by the child's cries during the night, though not by the cries he must have made when his injuries were sustained. The defendant had been awake much of the night before caring for the baby, who had been fussy, refused to eat, and displayed flu-like symptoms. She had then spent the day with the child, visiting the pediatrician and running errands with her father. The defendant did wake to feed the baby twice during the night, though she did not notice any injuries on the child until the following morning. Beyond the living room where the three slept that night, the defendant's apartment consisted of the defendant's bedroom, the baby's bedroom, a small bathroom, and a kitchen. No evidence was presented suggesting that the

the entire trial." *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986). "We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). If after such a review we are left with "uncertainty that the defendant's guilt has been fairly adjudicated," then the defendant has suffered such a risk. *Commonwealth* v. *Chase*, 433 Mass. 293, 299 (2001).

baby sustained his injuries in the immediate vicinity where the defendant lay sleeping. Moreover, it is far from certain that the baby's injuries occurred, as the majority concludes, "serially" over the course of some period of time.

Accordingly, the erroneous instruction, though invited by defense counsel, created a substantial risk of a miscarriage of justice.