## Commonwealth vs. Elizabeth Roderiques.

Bristol. February 7, 2012. - June 4, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, & Gants, JJ.

*Assault and Battery. Reckless Endangerment of a Child. Practice, Criminal,*
Lesser included offense, Request for jury instructions, Assistance of counsel.
*Evidence,* Expert opinion. *Witness,* Expert.

At the trial of indictments charging, inter alia, wantonly and recklessly permitting an assault and battery on a child causing substantial bodily injury, in violation of G. L. c. 265, § 13J (*b*), fourth par., the judge erred in acquiescing to defense counsel's request for a jury instruction on reckless endangerment of a child, in violation of G. L. c. 265, § 13L, as a lesser included offense, where, although reckless endangerment of a child is a lesser included offense of G. L. c. 265, § 13J (*b*), fourth par., there was no evidence in the record that would permit the jury to convict the defendant of the lesser included offense rather than the greater offense [420-425]; however, counsel's decision to request the instruction was a tactical decision that was far from manifestly unreasonable when made and worked no injustice to the defendant, who received a benefit to which she was not entitled [425-426], and, where the evidence amply supported a guilty verdict on the second indictment as charged, it could not be said that the instruction created a substantial risk of a miscarriage of justice [426-428].
At the trial of indictments charging, inter alia, wantonly and recklessly permitting an assault and battery on a child causing substantial bodily injury, in violation of G. L. c. 265, § 13J (*b*), fourth par., the judge did not abuse his discretion by admitting in evidence testimony by the Commonwealth's expert that the child's injuries were not accidental, where the expert's analysis was confined to the mechanism by which the injuries were suffered but did not speculate as to the circumstances of or ultimate responsibility for those injuries. [428-429]

Indictments found and returned in the Superior Court Department on March 3, 2005.

The cases were tried before *D. Lloyd Macdonald,* J., and a motion to vacate a conviction was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Colleen A. Tynan* for the defendant.

*Tara L. Blackman*, Assistant District Attorney (*Kristen L. Spooner*, Assistant District Attorney, with her) for the Commonwealth.

CORDY, J. During the night of December 23-24, 2003, the defendant's infant son suffered fractures to his right upper arm, clavicle, ribs, vertebrae, both femurs, and his right lower leg. The only people present in the apartment aside from the infant were the defendant and the defendant's boy friend, Shawn Cambra.

A Bristol County grand jury returned two indictments against the defendant. The first charged her with committing an assault and battery on a child under fourteen years of age causing substantial bodily injury. G. L. c. 265, § 13J (*b*), second par. The second charged her with wantonly and recklessly permitting an assault and battery on a child that caused the child substantial bodily injury. G. L. c. 265, § 13J (*b*), fourth par. At defense counsel's request and with the Commonwealth's eventual agreement, the judge instructed the jury that they could consider whether the defendant recklessly endangered her child in violation of G. L. c. 265, § 13L, as a lesser included offense of the offense charged in the second indictment. The jury acquitted the defendant of the offenses charged in the indictments but found her guilty of the lesser included offense.

The defendant filed a motion to vacate the conviction, claiming that the crime of reckless endangerment of a child was not a lesser included offense and that the jury instruction to the contrary that her counsel had requested should not have been given. The judge denied the motion. The defendant appealed, reasserting this claim of error, and also claiming that the Commonwealth's expert witness at trial impermissibly offered an opinion on the ultimate issue in the case.

A divided panel of the Appeals Court affirmed the conviction. *Commonwealth* v. *Roderiques*, 78 Mass. App. Ct. 515 (2011). The court found it unnecessary to decide whether reckless endangerment of a child is a lesser included offense of recklessly permitting an assault and battery on a child, concluding that even if the judge erred by giving the instruction, the defendant invited the error. While inclined to apply the "invited error doctrine" and forgo review entirely, the Appeals Court went on

to consider whether the instruction, if error, created a substantial risk of a miscarriage of justice. The court concluded that it did not because the evidence was sufficient to convict the defendant of the greater offense. *Id.* at 519-521. The court further found that the judge did not abuse his discretion by allowing admission of the expert's testimony. *Id.* at 522. The dissent questioned both the court's invocation of the invited error doctrine and its conclusion that no substantial risk of miscarriage of justice was present. *Id.* at 522-524 (Graham, J., dissenting). We granted the defendant's application for further appellate review. We now affirm the conviction on somewhat different grounds.

1. *Background.* We summarize the evidence before the jury. In December, 2003, the defendant, aged seventeen, lived in a New Bedford apartment with her infant son, then seven weeks old, and Cambra. The apartment contained five rooms — a living room, kitchen, bathroom, and two bedrooms. The front door of the apartment led into the living room, through which the other rooms were accessed. The defendant's father, Rene Roderiques, was then living with his girl friend and her daughter at another location in New Bedford. Rene kept in contact with the defendant, stopped by the apartment almost daily, and would drive the defendant anywhere she needed to go.

On the afternoon of December 23, 2003, Rene and the defendant took the infant to the pediatrician, because the infant was displaying flu-like symptoms and had kept the defendant awake throughout the previous night. The doctor gave the baby an electrolyte solution and advised the defendant to administer more to the infant that night. Apart from the flu symptoms and a small bruise on his cheek, nothing out of the ordinary about the infant was observed during the visit. The defendant returned to the apartment, and she and Cambra were the only people to have contact with the baby that night.

The defendant put the infant to sleep on one of the recliner chairs in the living room. She and Cambra slept on the pull-out sofa bed, with their heads at its foot, right next to the infant's recliner. The defendant, who described herself as a heavy sleeper, explained that she wished to ensure that she would hear the baby if he stirred. When the sofa bed was extended, it touched the recliner on which the baby slept, thereby bisecting the room.

Cambra slept on the side of the sofa bed that was oriented toward the apartment's front door, and the defendant slept on the side from which the rest of the apartment could be accessed. The defendant got up to feed and change the baby a few times during the night, the last of which was around 6 A.M.

At approximately 9 A.M., the defendant woke up with Cambra still sleeping beside her and the baby still asleep on the recliner. She began to dress the baby, who had a 10 A.M. doctor's appointment for an unrelated condition. It was at that point that Cambra alerted the defendant to a large bruise extending all the way around the infant's right arm. The defendant telephoned her father and, in a hysterical voice, told him that the infant's arm had been dislocated. Rene and his girl friend's daughter arrived shortly thereafter. They discovered the infant lying on a bed crying, with Cambra sitting beside him. The infant's arm was bent and red. They rushed him to a local hospital where he was examined and later flown to Children's Hospital in Boston.

Two New Bedford police detectives observed the baby at the hospital in New Bedford. One of them testified that the baby had a big red bruise on his upper right arm, a bruise on his nose, a bruise forming on his left cheek which extended to his ear, and bruising on the abdomen and upper thighs. The baby was not crying and not in visible distress. When the infant was finally examined at Children's Hospital, doctors discovered that he had suffered a fracture of the right upper arm, multiple fractures to both legs, rib fractures, a compression fracture of the spine, and a fractured clavicle.

The defendant was interviewed at the New Bedford hospital by Detective Eric Swenson of the State police and by an investigator with the Department of Social Services. She initially stated that she had slept in her bed that night and that the baby had slept in his bassinet. She had fed the baby at 2 A.M. and 6 A.M., discovering nothing amiss, and had otherwise not heard the baby cry or scream that night. When Detective Swenson asked her whether she knew who injured the baby, she responded with "[s]omething to the effect of, 'It wasn't me. It must have been [Cambra].' " She further admitted to yelling sometimes at the baby, and that particularly throughout the night of December 23 and 24 Cambra had been yelling at the baby to stop crying.

The defendant agreed to go to the police station, where she was interviewed by Swenson a second time. This time, she changed her story and admitted that she had slept on the sofa bed with Cambra and that the baby had slept on the recliner. She had been afraid to admit that before because her father, who was present at the hospital, would have been upset that the baby was not sleeping in his bassinet.

Cambra was also interviewed at the police station. Cambra told the police that the defendant must have hurt the baby because he had not. Cambra also related that on December 23 he had been playing "air drums" with the baby, a maneuver in which he grabbed the infant's arms and waved them around in the air as if the baby were playing drums. In regards to that night, Cambra stated that he and the defendant slept on the sofa bed and the baby slept on the recliner. He also said that, because he slept on the portion of the sofa bed oriented toward the apartment's front door, it would be necessary to step on the recliner if he wanted to access the bathroom. Cambra did recall getting up to use the bathroom or to get a drink of water, and claimed that it was possible that he had stepped on the baby, though he did not think that had happened. He claimed, however, to have some medical conditions that might have caused him to black out and lose consciousness at some point.

Both the Commonwealth and the defendant introduced expert testimony concerning the extent and causes of the baby's injuries. Dr. Jennifer Denton, one of the doctors who evaluated the baby at Children's Hospital, testified on behalf of the Commonwealth. She explained that the baby's injuries were usually produced through various mechanisms. The break in the lower right leg was a so-called "bucket handle fracture," produced by a forceful pulling or twisting at the end of the limb and a frequent component of what is known as "shaken baby" syndrome. The compression fracture to the spine was produced by a force that traveled along the spine vertically, such as the force generated when a child is slammed down on his buttocks. The remaining fractures were the product of general trauma; in particular, the broken right femur was a very unusual break, which could not have been done without significant force, even to an infant. These injuries would have been painful to the baby, and he would have cried and been difficult to console.

Denton concluded that, in her opinion, the baby had not suffered "accidental injuries." In her view, someone stepping on the baby while he slept in the recliner could not have caused all the fractures. The cushioned recliner would have absorbed some of the impact; also, the directional force imparted by stepping on a baby lying flat could not have produced the compression fracture in the spine or the bucket handle fracture in the leg. Denton also concluded that it was possible that all the injuries took place between the baby's doctor's appointment on the December 23 and the morning of December 24, although the fractures to the lower right leg and vertebrae could not be dated with certainty.

Dr. Janice Ophoven, a licensed physician and forensic pathologist from Minnesota specializing in injuries to children, testified on behalf of the defendant. Having reviewed all of the baby's medical records, she concluded that the injuries were consistent with having occurred between December 23 and 24. She further testified that someone stepping hard on a baby in the process of getting in and out of a recliner could produce multiple fractures. The bucket handle fracture could have been caused by means other than by pulling or twisting the limb. Ophoven testified that the baby would have cried at the time of the injury, but it is unpredictable how long a baby will cry after an injury, especially because this baby was not crying when he arrived at the hospital. In her view, it was possible that the baby could have received the injuries by being stepped on, but she would need more information about the exact circumstances, and she could not say with certainty what had happened to the baby.

2. *Discussion.* The defendant first contends that the judge erred in instructing the jury that reckless endangerment of a child, G. L. c. 265, § 13L, is a lesser included offense of wantonly or recklessly permitting another to commit an assault and battery on a child, G. L. c. 265, § 13J (*b*), fourth par. She argues further that even if it were a lesser included offense, there was no factual basis in the evidence on which giving the lesser included instruction was appropriate.

A "lesser included offense is one which is necessarily accomplished on commission of the greater crime." *Commonwealth* v. *Porro*, 458 Mass. 526, 531 (2010), quoting *Commonwealth* v.

*D'Amour*, 428 Mass. 725, 748 (1999). When comparing the two crimes, we consider the elements of the crimes rather than the facts of any particular case. *Commonwealth* v. *Vick*, 454 Mass. 418, 431 (2009), and cases cited. "A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime." *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 808 (2007), quoting *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984).

When statutory crimes can be violated in multiple ways, comparison of their elements must focus on the specific variations that the defendant is alleged to have committed. For example, if a greater offense contains two independent theories of liability, it is sufficient that a lesser offense be subsumed within the particular theory that was alleged. See *Commonwealth* v. *Ogden O.*, *supra* (assault and battery by means of dangerous weapon is lesser included offense of mayhem [second theory]); *Commonwealth* v. *Dixon*, 34 Mass. App. Ct. 653, 655-657 (1993) (considering whether assault and battery is lesser included offense of attempted murder by strangling, G. L. c. 265, § 16, same statute as attempted murder by poisoning or drowning). Conversely, when a lesser offense contains an element that can be satisfied in multiple ways, and the purportedly greater offense can be satisfied in only one of those ways, the former is still included within the latter. Any person who violates the greater offense will still always violate the lesser offense. As we have stated in another context, "[A]lternative methods of establishing a required element are not distinct 'theories' of how the crime may be committed, but are merely similar, equivalent types of conduct any one (or more) of which will suffice to prove a single element." *Commonwealth* v. *Santos*, 440 Mass. 281, 289 (2003) (explaining rule of juror unanimity).

With these principles in mind, we turn to the two statutes involved in the present case. General Laws c. 265, § 13J, describes four variations of the crime of assault and battery on a child. The variation alleged in the defendant's second indictment provides:

> "Whoever, having care and custody of a child, wantonly or recklessly permits substantial bodily injury to such

child or wantonly or recklessly permits another to commit an assault and battery upon such child, which assault and battery causes substantial bodily injury, shall be punished by imprisonment in the state prison for not more than five years, or by imprisonment in a jail or house of correction for not more than two and one-half years."

G. L. c. 265, § 13J (*b*), fourth par. A "[c]hild" is defined as "any person under fourteen years of age." G. L. c. 265, § 13J (*a*). General Laws c. 265, § 13L, provides in relevant part:

"Whoever wantonly or recklessly engages in conduct that creates a substantial risk of serious bodily injury or sexual abuse to a child or wantonly or recklessly fails to take reasonable steps to alleviate such risk where there is a duty to act shall be punished by imprisonment in the house of correction for not more than 2 1/2 years.

"For the purposes of this section, such wanton or reckless behavior occurs when a person is aware of and consciously disregards a substantial and unjustifiable risk that his acts, or omissions where there is a duty to act, would result in serious bodily injury or sexual abuse to a child. The risk must be of such nature and degree that disregard of the risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

A "[c]hild" is defined as "any person under 18 years of age." *Id.*

Comparing the elements of each offense reveals that the elements of § 13J (*b*), fourth par., encompass all the elements of § 13L. The elements of § 13J (*b*), fourth par., are (i) a child under fourteen; (ii) in care and custody; (iii) a substantial bodily injury; (iv) the defendant wantonly or recklessly permitted this substantial bodily injury, or wantonly or recklessly permitted another to commit an assault and battery on the child causing substantial bodily injury. The elements of § 13L are (i) a child under eighteen; (ii) a substantial risk of serious bodily injury or sexual abuse; (iii) the defendant wantonly or recklessly engaged in conduct that created this substantial risk, or failed to take reasonable steps to alleviate such risk where there is a duty to act.

With respect to the first element, the age of the child, § 13J (*b*) requires that the child be under fourteen while § 13L requires that the child be under eighteen. Logically, every child that is under fourteen is also under eighteen. Thus, every situation that satisfies this element in § 13J (*b*) also satisfies this element in § 13L.[1]

The third element of § 13J (*b*), fourth par., substantial bodily injury, necessarily includes the second element of § 13L, substantial risk of serious bodily injury or sexual abuse.[2] The occurrence of an injury presupposes that a risk of injury has been created. Stated differently, in the former case the risk of injury has come to fruition in the form of an actual injury. See *Commonwealth* v. *Porro*, 458 Mass. 526, 533 (2010) (assault as attempted battery is "clearly" lesser included offense of intentional assault and battery, because only additional element in latter is completion by actual touching); *Commonwealth* v. *Martin*, 425 Mass. 718, 722 (1997). It is true that, in § 13L, this element can be satisfied through an alternative means, namely through creating a substantial risk of sexual abuse of a child. Nevertheless, this alternative means is not required for violation of § 13L and does not prevent § 13L from being a lesser included offense. See *Commonwealth* v. *Santos*, *supra* at 289.

The final element of § 13J (*b*), fourth par., criminalizes child abuse resulting from acts of omission. See *Commonwealth* v. *Garcia*, 47 Mass. App. Ct. 419, 419-420 (1999). This element thus encompasses the latter alternative of the third element of § 13L — wantonly or recklessly failing to take reasonable steps to alleviate risk of serious bodily harm when there is a duty to

---

[1] Even a more restrictive threshold in the second statute would not prevent it from being a lesser included offense, where it is undisputed that the age of the child is under both thresholds. See, e.g., *Commonwealth* v. *Walker*, 426 Mass. 301, 304 (1997).

[2] The terms "[s]ubstantial bodily injury" in G. L. c. 265, § 13J (*b*), and "[s]erious bodily injury" in § 13L have essentially identical meanings. General Laws c. 265, § 13J (*a*), defines "[s]ubstantial bodily injury" as "bodily injury which creates a permanent disfigurement, protracted loss or impairment of a function of a body member, limb or organ, or substantial risk of death." General Laws c. 265, § 13L, defines "serious bodily injury" as "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death."

act.[3] Because the second element of § 13J (*b*), fourth par., restricts the statute to those who have "care and custody of a child," every person who violates § 13J (*b*) also had a "duty to act." *Commonwealth* v. *Robinson*, 74 Mass. App. Ct. 752, 759 (2009), and cases cited.

In sum, because each element of § 13J (*b*), fourth par., encompasses a corresponding element of § 13L, and because there are no additional elements in § 13L that are not in § 13J (*b*), fourth par., § 13L is a lesser included offense of § 13J (*b*), fourth par. See *Commonwealth* v. *Porro*, *supra* at 531; *Commonwealth* v. *Martin*, *supra*.

We now turn to the question whether, based on the evidence at trial, the judge erred in instructing the jury on the lesser included offense. Lesser included instructions are appropriate where "the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Souza*, 428 Mass. 478, 494 (1998), quoting *Commonwealth* v. *Donovan*, 422 Mass. 349, 352 (1996). "Where there is no evidence to justify a lesser included instruction, that is, no evidence would permit the jury to convict the defendant of the lesser included offense rather than the greater offense, we have concluded that it is reversible error to allow the jury to convict the defendant of the lesser charge." *Commonwealth* v. *Porro*, *supra* at 537, citing *Commonwealth* v. *Nardone*, 406 Mass. 123, 130 (1989) (reversible error where lesser included instruction given over defendant's objection). The test we apply in these circumstances is whether, on " 'any hypothesis of the evidence, the jury could have found the defendant[] guilty of [the lesser included offense]' and not guilty of the greater offense." *Commonwealth* v. *Porro*, *supra*. In determining whether there is such a hypothesis, "the judge may consider the possibility that the jury reasonably may disbelieve the witnesses' testimony regarding an element required of the greater, but not the lesser included, offense . . . even

---

[3]By the same logic, the other alternative for fulfilling this element of G. L. c. 265, § 13L — "wantonly or recklessly engag[ing] in conduct that creates a substantial risk of serious bodily injury" — is a lesser included offense of G. L. c. 265, § 13J (*b*), second par., which prohibits committing an assault and battery on a child that causes substantial bodily injury.

though the element that distinguishes the two offenses was not specifically disputed or put in issue at trial." *Id.*

The defendant and the Commonwealth agree that there was no view of the evidence on which the elements unique to § 13J (*b*) — care and custody, and causation of substantial bodily harm — were not present, but the elements common to § 13J (*b*) and § 13L were present. If the defendant was awake during an intentional battering of the baby, she committed both crimes; if she was asleep or the injuries were inflicted accidentally by Cambra, she committed no crime.[4] The defendant's attorney therefore erred in requesting the lesser included instruction, and the judge erred in acquiescing to the request. See *Commonwealth* v. *Porro, supra* at 538. We review each error based on the applicable standard: the attorney's error for ineffective assistance of counsel[5] and the judge's error for a substantial risk of a miscarriage of justice.

The familiar standard used to analyze a claim of ineffective assistance of counsel is "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Watson*, 455 Mass. 246, 256 (2009), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). "A strategic

---

[4]On the defendant's theory, she may have acted in poor judgment by setting up the sleeping arrangements in such a way that Cambra would be forced to climb over the baby's recliner (or over herself) in order to access the bathroom. While mindful that a lesser included instruction is appropriate where supported by "any hypothesis of the evidence," *Commonwealth* v. *Porro*, 458 Mass. 526, 537 (2010), quoting *Commonwealth* v. *Thayer*, 418 Mass. 130, 132 (1994), we are inclined to agree with the parties that this decision would not have constituted reckless creation of a risk. There was also no evidence suggesting that the defendant was aware of any violent tendencies or prior criminal conduct by Cambra.

[5]Appellate counsel, who was also trial counsel, made no claim that the defendant was deprived of effective assistance of counsel at her trial. We nonetheless reach this issue now where its resolution is readily apparent on the record. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006) (although preferred method for raising ineffective assistance claim is through motion for new trial, such claim may be resolved on direct appeal where basis of claim plainly appears on trial record).

or tactical decision by counsel will not be considered ineffective assistance unless the decision was 'manifestly unreasonable' when made." *Commonwealth* v. *Watson, supra,* quoting *Commonwealth* v. *Martin,* 427 Mass. 816, 822 (1998).

Here, counsel's decision to request the lesser included instruction was a tactical decision that was far from manifestly unreasonable when made. A violation of § 13J (*b*) is a felony punishable by up to five years in State prison. A violation of § 13L, on the other hand, is a misdemeanor punishable by up to two and one-half years in a house of correction. The baby's injuries were extensive and plainly caused on an evening when only Cambra and the defendant were present. In addition, the defendant had initially lied to the police about where the baby was sleeping that night. In light of this evidence, defense counsel readily recognized that the jury might be reluctant to acquit the defendant and, at the same time, might also be reluctant to convict the defendant for the greater offense if they believed that Cambra intentionally inflicted the baby's injuries, and if conviction for a lesser offense were available. Because there was no rational view of the evidence that permitted conviction of the lesser offense but not the greater offense, this instruction gave the defendant a benefit to which she was not entitled. Counsel's request for the lesser included offense thus "shows a reasoned tactical decision which succeeded and, here, worked no injustice to the defendant." *Commonwealth* v. *Bynoe,* 49 Mass. App. Ct. 687, 695 (2000) (rejecting claim of error where counsel failed to object to erroneous instruction on lesser included offense). See *Commonwealth* v. *Simcock,* 31 Mass. App. Ct. 184, 196 (1991) (same). Cf. *Commonwealth* v. *Donlan,* 436 Mass. 329, 333-335 (2002), and cases cited (tactical decision not to request instruction on lesser included offense not ineffective assistance of counsel).

A substantial risk of a miscarriage of justice exists "if we have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *LeFave,* 430 Mass. 169, 174 (1999). We may reverse a conviction on this basis only when it would be reasonable to conclude that the error materially influenced the verdict. *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 (1999). In making this determina-

tion, we may consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and whether it can be inferred from the record that counsel's acquiescence was not simply a reasonable tactical decision. *Id.*, quoting *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

Here, viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the evidence amply supported a guilty verdict on the second indictment as charged. The Appeals Court noted that "it was uncontested that the baby's injuries occurred during a period when the defendant and [Cambra] were alone with him. It was uncontested that the injuries were extensive and traumatic. And it was uncontested that infliction of the injuries would have caused the baby to 'cry out loud . . . for some period of time.' " *Commonwealth* v. *Roderiques*, 78 Mass. App. Ct. 515, 520 (2011). The medical evidence further supported a conclusion that the injuries occurred through at least three different acts: violent twisting of the baby's leg; vertical compression of the baby's spine; and application of blunt force to the upper arm, ribs, and legs. The evidence thus strongly supported an inference that, if Cambra intentionally inflicted the baby's injuries, the defendant was aware of the assaults before they were completed, had an opportunity to intervene, but wantonly and recklessly failed to do so. See *Commonwealth* v. *Garcia*, 47 Mass. App. Ct. 419, 422-423 (1999).

Further, having concluded that § 13L is indeed a lesser included offense of § 13J (*b*), we discern no merit in the defendant's concern that the Commonwealth tried its case based on the elements of § 13J (*b*), and that the jury therefore might not have fully considered the evidence in relation to the elements of § 13L. The elements that the two statutes share in common are, on close examination, essentially identical, and the Commonwealth's required proof was the same for both.

Finally, one factor to be considered in determining whether an error has created a substantial risk of a miscarriage of justice is whether defense counsel's failure to object was simply a reasonable tactical decision. See *Commonwealth* v. *Dargon*, 457 Mass. 387, 397 (2010); *Commonwealth* v. *Alphas, supra*; *Com-*

monwealth v. *Bynoe, supra* at 693-694. As discussed, defense counsel made a tactical decision to request a lesser included offense instruction. "The consequences of trial tactics may not be converted after conviction into alleged errors by the judge." *Commonwealth* v. *Simcock, supra* at 196, and cases cited. We therefore conclude that, although erroneously charged, the lesser included offense instruction created no substantial risk of a miscarriage of justice.

We next turn to the defendant's contention that the Commonwealth's expert, Denton, impermissibly offered an opinion on an ultimate issue in the case. Denton testified that, in her opinion, the baby's injuries were "not accidental" and certain of the baby's injuries could not have been caused by a man stepping on the child while asleep in a recliner.

"The purpose of expert testimony is to assist the trier of fact in understanding evidence or determining facts in areas where scientific, technical, or other specialized knowledge would be helpful." *Commonwealth* v. *Pytou Heang*, 458 Mass. 827, 844 (2011). "Expert testimony is generally admissible whenever it will aid the jury in reaching a decision." *Commonwealth* v. *Woods*, 419 Mass. 366, 374 (1995). The admission of expert testimony is within the discretion of the trial judge, and a judge's decision to admit expert testimony is subject to review only for abuse of discretion. *Commonwealth* v. *Shanley*, 455 Mass. 752, 762 (2010).

When medical expertise is necessary to aid understanding evidence, experts may testify as to the cause of a victim's injuries. "An opinion within the domain of the expert's professional knowledge may be admissible even if the expert's testimony touches on the ultimate issues before the jury." *Commonwealth* v. *Woods, supra* at 374-375. See *Commonwealth* v. *Azar*, 435 Mass. 675, 678-679 (2002) (expert testified that victim's injuries consistent with battered child syndrome); *Commonwealth* v. *Pikul*, 400 Mass. 550, 552-555 (1987) (expert testified as to cause of victim's death and that "there was no other cause suggested by all the information available"). The "expert may not, however, offer an opinion as to the defendant's innocence or guilt." *Commonwealth* v. *Woods, supra* at 375, citing *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982).

In the present case, "[w]hether the injuries suffered by the baby could have been caused by someone stepping on him on a recliner was squarely within the area where professional expertise was both helpful and appropriate." *Commonwealth* v. *Roderiques, supra* at 522. In view of the variety and severity of the baby's injuries, there was no straightforward way of putting such testimony before the jury without touching on this ultimate issue. Moreover, Denton never offered an opinion as to the defendant's ultimate innocence or guilt. Her analysis was confined to the mechanism by which the injuries were suffered but did not speculate as to the circumstances or ultimate responsibility for those injuries. The judge did not abuse his discretion by allowing admission of this testimony.

*Judgment affirmed.*