## COMMONWEALTH vs. EVERTON MUIR.

No. 12-P-1767.

Suffolk. October 18, 2013. - December 18, 2013.

Present: COHEN, MEADE, & SULLIVAN, JJ.

*Motor Vehicle,* Leaving scene of accident. *Practice, Criminal,* Lesser included offense, Instructions to jury.

At the trial of an indictment charging the defendant with leaving the scene of an accident causing death, the judge did not err in instructing the jury on leaving the scene of an accident causing personal injury, where that offense is a lesser included offense of the charged offense, in that a 1991 amendment to the relevant statute did not make the absence of death a separate element of the offense of leaving the scene of an accident causing personal injury but, rather, differentiated that misdemeanor offense from the felony offense of leaving the scene of an accident causing death without making the former mutually exclusive of the latter [637-641]; and where the jury rationally could have found that the Commonwealth failed to prove the aggravating element of the crime charged, i.e., flight with the intent to avoid prosecution or evade apprehension, but that the evidence presented justified the defendant's conviction of the lesser included offense [641-642].

This court did not reach an issue regarding an element of an offense of which the defendant was not convicted. [642]

INDICTMENT found and returned in the Superior Court Department on October 6, 2010.

The case was tried before *Patrick F. Brady,* J.

*Daniel R. Katz* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney, for the Commonwealth.

MEADE, J. The defendant was indicted for leaving the scene of an accident causing death in violation of G. L. c. 90, § 24(2)(a½)(2) (subsection 2).[1] After a jury trial, the defendant

---

[1]General Laws c. 90, § 24(2)(a½)(2), inserted by St. 1991, c. 460, § 2, states in pertinent part:

"Whoever operates a motor vehicle upon any way or in any place to

was convicted of leaving the scene of an accident causing personal injury in violation of G. L. c. 90, § 24(2)($a^{1/2}$)(1) (subsection 1).[2] He was given a suspended sentence of six months, with two years of probation. On appeal, the defendant claims it was error for the judge to have instructed the jury on subsection 1 because it is not a lesser included offense of subsection 2, the evidence did not justify a lesser included instruction, and the evidence was insufficient to establish the defendant left the scene of the accident to avoid prosecution or evade apprehension. We affirm.

*Background.* The following was the evidence adduced at trial. On April 1, 2010, at approximately 6:00 A.M., the defendant drove his girlfriend to the Wonderland subway station and dropped her off so she could take the subway to work. After completing this task, the defendant drove home.

At approximately the same time that morning, Blanca Moreno's (the victim) car broke down on Route 1A in Revere. According to the State Police accident reconstructionist, at approximately 6:15 A.M., the victim was running across the northbound lane of Route 1A against a red light when the defendant's car struck her as she neared the end of the crosswalk. The victim was launched onto the hood and up the windshield, and her elbow broke the glass. After that point of impact, the victim continued in the air and over a guardrail before she landed on the southbound side of Route 1A, eighty-seven feet from the

which the public has a right of access or upon any way or in any place to which members of the public shall have access as invitees or licensees and without stopping and making known his name, residence and the registration number of his motor vehicle, goes away to avoid prosecution or evade apprehension after knowingly colliding with or otherwise causing injury to any person shall, if the injuries result in the death of a person, be punished . . . ."

[2]General Laws c. 90, § 24(2)($a^{1/2}$)(1), inserted by St. 1991, c. 460, § 2, states in pertinent part:

"Whoever operates a motor vehicle upon any way or in any place to which the public has right of access, or upon any way or in any place to which members of the public shall have access as invitees or licensees, and without stopping and making known his name, residence and the registration number of his motor vehicle, goes away after knowingly colliding with or otherwise causing injury to any person not resulting in the death of any person, shall be punished . . . ."

point of collision. The defendant later reported that he swerved but did not apply his brakes before impact.

Visibility was low that morning, the defendant was driving within the posted speed limit of forty-five miles per hour, and his car left no skid marks at the scene of the accident. From these facts, the police concluded that the defendant "most likely" did not see the victim, and he had insufficient time to stop before hitting her.

After the collision, the defendant kept driving but telephoned his girlfriend to tell her he thought he "hit something, somebody, I don't know." The defendant sounded "upset" and "frightened." When his girlfriend asked if he had stopped, he said he was going home and did not "know what to do." After the conversation with his girlfriend, the defendant telephoned Kirk Palmer, a father figure in his life. The defendant frantically told Palmer that he hit something and his windshield was damaged. When Palmer asked him why he kept driving, the defendant said, "I don't know, I didn't see anything." He sounded panicked and told Palmer he was scared. Palmer told the defendant to stop, look for damage, and to contact the police. He also told the defendant he would telephone the Revere police.

When the defendant arrived at home, he immediately told his mother to contact the police because he thought he hit something. The defendant's mother telephoned the Lynn police and handed the telephone to the defendant. After providing a police officer with identifying information, the defendant told the officer that he had caused an accident on Route 1A. In this conversation, the defendant sounded neither panicked nor frantic.

After Palmer spoke to the Revere police, he telephoned the defendant and told him he should come to the Revere police station. En route to the police station, the defendant saw the victim's body covered in a white cloth on Route 1A.[3] This sight made the defendant "very nervous" and he began to cry. At the police station, the defendant admitted that he hit a "blur" but claimed he did not know what he hit. He repeatedly stated that he panicked after the collision.

*Discussion.* 1. *Lesser included offense.* The defendant claims

---

[3]The victim died at the scene before an ambulance arrived.

it was error for the judge, over objection, to instruct the jury on subsection 1 because it is not a lesser included offense of subsection 2. We disagree. "A 'lesser included offense is one which is necessarily accomplished on commission of the greater crime.'" *Commonwealth* v. *Roderiques*, 462 Mass. 415, 420 (2012), quoting from *Commonwealth* v. *Porro*, 458 Mass. 526, 531 (2010). When analyzing the two crimes, we consider only the elements of the crimes and not the facts or conduct at issue in the case. See *Commonwealth* v. *Vick*, 454 Mass. 418, 431 (2009); *Commonwealth* v. *Roderiques*, *supra* at 421. "A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime." *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 808 (2007), quoting from *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984).

The elements of subsection 2 include (1) operating a motor vehicle; (2) upon a public way; (3) knowingly colliding with or otherwise injuring any person; (4) going away without stopping and making known one's name, residence, and motor vehicle registration number; (5) in order to avoid prosecution or evade apprehension; where (6) the death of the victim was the result of the injuries sustained in the collision. G. L. c. 90, § 24(2)($a^{1/2}$)(2). Although the Commonwealth must prove that the victim's injuries resulted in death, and that the defendant knew either that he collided with a person or that he caused injury to a person, *Commonwealth* v. *Daley*, 463 Mass. 620, 623-624 (2012), the Commonwealth is not required to prove the defendant knew or expected death would result.

Similarly, the statutory language of subsection 1 punishes whoever (1) operates a motor vehicle; (2) upon a public way; (3) knowingly collides with another person or otherwise causes injury to another person; and (4) goes away without stopping and making known his name, residence, and the registration number of his motor vehicle; where (5) the collision caused injury to the person that did not result in death. G. L. c. 90, § 24(2)($a^{1/2}$)(1). As we have previously held, the two subsections are "almost identical," except that subsection 2 "applies only if the defendant's operation causes a death rather than [merely] injury[, and] it adds the element that the defendant 'goes away to avoid prosecution or evade apprehension' after

the collision." *Commonwealth* v. *Henault*, 54 Mass. App. Ct. 8, 11 n.5 (2002).[4]

The defendant claims that subsection 1 cannot be a lesser included offense of subsection 2 because the two crimes are mutually exclusive. In other words, even though all the elements of subsection 1 can be found in subsection 2, the defendant argues that because the victim died, he cannot be convicted of merely causing personal injury to her. This would be true if the phrase "not resulting in the death of any person," found in subsection 1, is an element of the crime. For the reasons that follow, we hold that it is not an element of subsection 1.

At trial, the defendant and the judge discussed the existential, if not esoteric, question whether death encompasses personal injury. That discussion continues on appeal. For the defendant, one either dies or she does not. On the other hand, the Commonwealth maintains that the defendant's claim is wrong as a matter of fact because death is a particular type of personal injury. The judge expressed a similar view at trial. While both views may find support, such a legislative policy choice is not a matter for judicial resolution. Rather, the real question for us to resolve is whether the Legislature intended the crimes to be mutually exclusive because it added the phrase "not resulting in . . . death" to subsection 1, and the phrase "if the injuries result in . . . death" to subsection 2, when the crime of leaving the scene of an accident was bifurcated into a misdemeanor and a felony. See note 4, *supra*; St. 1991, c. 460, §§ 1, 2.

The answer to the question lies within the canons of statutory construction. "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Although "[n]one of the words of a statute is to be regarded as superfluous," *Commonwealth* v. *Woods Hole, Mar-*

---

[4]Also, a violation of subsection 2 may be punished as a felony whereas subsection 1 is a misdemeanor, and a suspended sentence may not be imposed under subsection 2.

*tha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967), "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable. We assume the Legislature intended to act reasonably." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982). See *Commonwealth* v. *Parent*, 465 Mass. 395, 409 (2013).

When we review the language chosen by the Legislature, it becomes apparent that the main object of the 1991 amendment was to create a felony in cases involving death where a defendant leaves the scene with the specific purpose of avoiding prosecution or evading apprehension. Indeed, prior to the 1991 amendment, the crime delineated in G. L. c. 90, § 24(2)(*a*), was a misdemeanor without these components. See St. 1991, c. 460, § 1. We cannot conclude that the cause of the enactment carried with it the obligation, intention, or desire to make the absence of death an element in subsection 1. Rather, the language was chosen to differentiate it from the felony in subsection 2 without making it mutually exclusive.

An example of a similar, nonelement-creating differentiation can be found in the unarmed robbery statute. Pursuant to G. L. c. 265, § 19(*b*), as amended by St. 1981, c. 678, § 4, "Whoever, *not being armed* with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished . . ." (emphasis supplied). Despite this, the Commonwealth is not obliged to prove the defendant was unarmed as an element of the crime. See *Commonwealth* v. *Christian*, 430 Mass. 552, 556 (2000). The "not being armed" language in the statute merely differentiates it from the enhanced crime of armed robbery, which occurs when the defendant carries out the robbery with a dangerous weapon. *Ibid.* See G. L. c. 265, § 17.

Furthermore, to conclude that the "not resulting in . . . death" language in subsection 1 is an element of the crime would lead to an absurd result. To hold as such, we would have to ascribe to the Legislature the intent to criminalize leaving the scene of an accident causing injury regardless of the purpose for leaving (pursuant to subsection 1), but to make it legal for someone to leave the scene of an accident causing death, if the purpose for

leaving the scene was not to avoid apprehension or prosecution (in the case of a defendant charged under subsection 2, were no lesser included offense instruction permitted in the circumstances). Such a construction would be absurd and unreasonable. See *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. at 336.

Finally, the rule of lenity does not change the equation we face. Although the rule of lenity gives defendants the benefit of a plausible ambiguity, it "does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one." *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992). We decline to apply the rule for that reason.

2. *Lesser included instruction.* The defendant also claims that even if subsection 1 is a lesser included offense of subsection 2, the evidence did not justify the judge's giving of the instruction. More specifically, the defendant argues that because the victim died "instantly or within minutes of the collision," the jury could not have found the defendant guilty of subsection 1 (causing personal injury) without also finding him guilty of subsection 2 (causing death). We disagree.

A lesser included jury instruction may properly be given where "the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Roderiques*, 462 Mass. at 424, quoting from *Commonwealth* v. *Souza*, 428 Mass. 478, 494 (1998). However, where there is "no evidence that would permit the jury to convict the defendant of the lesser included offense rather than the greater offense," giving such an instruction is error. *Commonwealth* v. *Porro*, 458 Mass. at 537. To make this determination here, we must ask whether, on "any hypothesis of the evidence," the jury could have found the defendant guilty of violating subsection 1 and not guilty of violating subsection 2. See *ibid*; *Commonwealth* v. *Roderiques*, *supra*.

In some measure, the defendant's jury instruction claim mirrors his first argument regarding the relationship between personal injury and death, or lack thereof. However, we need not dwell on that subject, as the defendant's claim lacks merit because it ignores the other aggravating element of subsection 2. Here, the jury could rationally find that the Commonwealth failed to

prove the aggravating element of a flight with the intent "to avoid prosecution or evade apprehension." G. L. c. 90, § 24(2)($a^{1/2}$)(2). Compare *Commonwealth* v. *Donohue*, 41 Mass. App. Ct. 91 (1996) (where the victim died at the scene of a car accident, but the defendant left the scene because she panicked, rather than to avoid prosecution, she was charged with and convicted of violating subsection 1). The jury were entitled to credit the evidence that the defendant immediately contacted both his girlfriend and father figure to report the accident, directed his mother to telephone the police, and told the police he was responsible for the Route 1A collision. From this evidence of self-reporting, the jury could have believed the defendant fled out of panic and not to avoid prosecution or to evade the authorities. In fact, there was considerable evidence that the defendant panicked when he fled the scene. Although there was also evidence that the defendant was not panicked, a rational jury could discredit that testimony. See *Commonwealth* v. *Porro*, 458 Mass. at 537; *Commonwealth* v. *Roderiques*, 462 Mass. at 424-425. Accordingly, the evidence provided a rational basis for the jury to conclude that the defendant did not intend to avoid prosecution or evade apprehension, while also justifying his conviction of the lesser included offense.

3. *Sufficiency of the evidence.* Finally, the defendant claims there was insufficient evidence that he left the scene with the intent to avoid prosecution or evade apprehension. However, because subsection 1 does not contain such an element, and the defendant was acquitted of violating subsection 2 (where the element resides), we need not address the claim.

*Judgment affirmed.*